## Boyd v. Crescent Coal Co.

(Decided January 27, 1911.)

### Appeal from Muhlenberg Circuit Court.

Master and Servant—Safe Place—Duty.—The master is not required to make a place reasonably safe for a servant whom he has employed, and whose duty it is to put the place in a safe condition for himself and others. Therefore, when a servant so employed and so engaged is injured because of the failure of the master to provide him a reasonably safe place in which to work, he cannot recover of the master.

WILLIS & MEREDITH and HEAVRIN & WOODWARD, for appellant.

NEWTON & BELCHER, and BELCHER & SPARKS, for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, L. W. Boyd, brought this action against appellee, Crescent Coal Company, to recover damages for personal injuries. The jury found for defendant, and plaintiff appeals.

The only error relied upon is the failure of the court properly to instruct the jury.

Appellant charged in his petition that appellee's foreman commanded and directed him to remove certain falling slate. Appellant informed the foreman that he was afraid of the roof in the mines at that point. The foreman examined the roof, and after the examination directed appellant to proceed with the work, assuring him that the roof was perfectly safe and in no danger of falling. Appellant obeyed the orders of his superior, and while relying upon his assurance was injured by falling slate.

Appellant testified that he was forty-four years of age and had been engaged in mining for a period of seven years. At the time of the injury he was the timber foreman and in charge of a gang of three men. It was his duty to clean up the falls and to timber all places in the mines which were unsafe. The accident occurred on Tuesday. Appellant and his timber crew went to work at the place of the accident on the Friday preceding. When they went to work they began cleaning up the fall and timbering as they went. They had worked there Friday and Saturday and a part of Monday. On Monday the mine boss came to the place where appellant and his crew were at work cleaning up and making the entry safe, and directed them to clean up the slate as rapidly as possible so that Shemwell, a driver, could get the trucks through. Appellant objected to this because he was afraid of the slate. The mine boss told him the slate was as sound as any in the mine and that he would not be afraid to lie down under it and go to sleep. This conversation took place on the day before the accident. Appellant and his assistants had taken out about eighty cars of slate, and at the time of the accident were actually engaged in the work of timbering. Appellant admitted that after slate has fallen the roof is not safe, but he says he did not know it was as dangerous as it was. Appellant states that the very purpose of timbering up the mine was to secure himself and the men who were working under him. The roof did not fall while they were taking up the slate. They had laid down their shovels the day before at four o'clock. The accident occurred at about eleven o'clock the next morning. At the time of the accident appellant had not gotten up to the roof with the timber. He undertook to crib up as he went. The reason he began to timber was that he was afraid to

go under the roof without timbering. The evidence of appellant is confirmed by that of other witnesses.

At the conclusion of appellant's evidence, appellee asked for a peremptory instruction, which was refused.

Here, then, we have a case where the party injured was the foreman whom the master had employed for the purpose of making the mine safe. It was his duty to go to the different places in the mine that were unsafe, remove the fall, and timber up so that he, his timber crew and the other men in the mine could work with safety. Appellant bases his whole right to recover on the fact that the mine boss assured him that the roof was safe and that he could remove the fall and then timber up. As a matter of fact, he was not injured in removing the fall. Nor did he rely upon the assurance of the mine foreman. He began to timber the place, and was actually engaged in the work of timbering when the accident occurred. He admitted that there was danger from the roof where there had been a fall, but claimed that he did not know it was as dangerous as it was.

The facts of this case bring it within the rule laid down in Williams Coal Co. v. Cooper, 127 S. W., 1002, where the court said:

"In mining as well as in many other occupations, there are persons whose duty it is to examine and provide for the safety of the places in which other servants are to work. There are servants who prepare the places and servants who work in these places after they have been prepared. As to the servants engaged in the work of preparation, and who are employed to make places safe for other servants, the doctrine of safe place does not apply. The master should not be required to make the places safe for those he has employed to put them in safe condition."

The reason for this rule is perfectly apparent. As the duty of making the place reasonably safe devolves upon the master, he must employ persons for that purpose. If he had to employ one man to make the place reasonably safe for another whom he employed for that purpose, then he would be under a like duty with reference to the first man so employed, and so on in a never-ending condition of liability. This would make the master an insurer. The law, however, is not so exacting. The servant who is employed to make a place safe, knows that he would not be called upon to do the work unless the place was unsafe. He begins the work, there-

fore, with actual knowledge of the condition of the place which it is his duty to make safe. While ordinarily, of course, the servant does not assume the risk incident to a dangerous place, he must necessarily assume the risk when he is employed for the sole purpose of making the place safe. We, therefore, conclude that appellee was entitled to a peremptory instruction. That being true, we deem it unnecessary to review the instructions given by the trial court, for, even if erroneous, appellant could not have been prejudiced thereby, inasmuch as upon his own testimony he was not entitled to have the case submitted to the jury at all.

Judgment affirmed.