## Lawson, Trustee v. Hatfield, Jr., et al.

(Decided December 8, 1911.)

### Appeal from Pike Circuit Court.

1. Lands—Action of Trespass to Try Title—Adverse Possession—Evidence.—In an action of trespass to try title, evidence of ad-

verse possession by defendants examined and held sufficient to sustain a verdict in their favor.

2.   Judgment—Error.—Where there are three defendants claiming the land in controversy and plaintiff acquires the title of two of them and takes judgment against them it is error upon return of a verdict in favor of the defendants to ignore the former judgment in favor of the plaintiff, and adjudge that the remaining defendant and four of his brothers and sisters who were not parties to the action were the owners of the land.

HAGER & STEWART, HARKINS & HARKINS, GEO. I. NEAL and EDWARD C. LYON for appellant.

BUTLER & MOORE, J. I. CLINE and J. M. YORK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

This action of trespass was brought by appellant, W. H. Lawson, as trustee of Luther Kountze, against appellees, Joseph Hatleld, Jr., and others, to try title to a tract of land fully described in the petition, and to enjoin appellees from cutting and carrying away the timber therefrom. Appellees answered denying the title of appellant and asserting that the timber in question was cut from a certain tract of land described in the answer and containing one hundred acres to which they set up title by adverse possession. Upon motion of appellees an issue out of chancery was awarded for the purpose of submitting to the jury the question whether or not the timber was cut from the one hundred acres of land, and whether or not appellant or appellees were the owners thereof. The jury returned a verdict in favor of appellees, and judgment was entered accordingly. From that judgment an appeal was prosecuted to this court. Here the judgment was reversed on the ground that the verdict in favor of appellees was flagrantly against the evidence. At the same time this court held that the instructions did not properly present the law of the case, though the error in this respect was not complained of and could not, therefore, be considered as ground for reversal. The opinion on the former appeal may be found in 30 Ky. Law Rep., 589, under the style of Kountze v. Hatfield, &c. Upon the return of the case the question of adverse possession on the part of appellees was again submitted to the jury by instructions which are not complained of, and the jury again returned

a verdict in favor of appellees. From that judgment this appeal is prosecuted.

The evidence for appellees is to the effect that their father owned certain tracts of land known as lots 9, 10, 11 and 12 on the plat filed in the record. During the Civil War he built a house on lot 9. Half of this house was within his own patent, while the other half extended over the line on to the patent of appellant and on the one hundred acres of land in controversy. This house their father continued to occupy until his death, and after his death certain members of his family occupied it. More than fifteen years prior to the institution of this action, old man Hatfield had the tract in controversy surveyed by a man by the name of Johnson. At the time of this survey a boundary was marked all around the land. The marked boundary commenced "at a sugar tree and ran up Fork Ridge between Seng Camp and Main Creek to Peel Poplar and around the ridge of Peel Poplar down to Jim Hatfield's line and across and back to the beginning to the sugar tree." This boundary was plainly marked all around. It was marked with a hatchet, and on most of the timber there were two hacks. Any one could follow the marked timber around the boundary. This marking was done about twenty-seven or twenty-eight years prior to the time of the last trial, which occurred in 1910.

According to the testimony of Jake Hatfield, who helped carry the chain, the boundary was marked all the way around, and it was the best marked boundary he ever saw. The old house stood on the inside of this marked boundary, and the timber was cut therefrom. His father occupied the land in controversy and claimed same to the extent of the marked boundary. After his death his children, who succeeded to their father's title by deeds from him and by his last will and testament, claimed to the extent of this boundary. They and their father cultivated a portion of this boundary, and cut rail and timber therefrom whenever they pleased.

W. F. Coleman, another witness, testified that he had known the marked boundary for about twenty-seven years; that it was plainly marked, and one could begin at any marked object and go around the entire boundary.

Jordon Dotson testified that he knew where the timber was cut, and that it was cut on the inside of the marked boundary. He also stated that, about twenty-eight years before giving his testimony, Thomas Hatfield,

father of appellees, worked on the land in controversy and sold timber therefrom. To the same effect is the testimony of J. P. Hatfield.

For appellant, young Thomas Hatfield, who since the first trial had sold and conveyed his interest in the land in controversy to appellant, and who upon the former trial testified as to the time when the boundary was marked and that it was marked all the way around, stated, upon the second trial, that he had recently gone and examined the boundary and found that it was not marked all the way around.

Mrs. Robinet, formerly America Hatfield, a sister of appellees, testified that, just before her father's death, she had a conversation with him in which he was talking about dividing his land. He told her he would give her that part of the land on the right-hand side of the creek; that on that side the big survey would not hurt her, while on the left-hand side of the creek it would take right smart. He further told her not to cut any chestnut timber on the big survey. A. L. Robinet, her husband, testified that, during the fall preceding the time of giving his testimony, he and Jake Hatfield went over the boundary in question and found some places marked and some not marked.

Joe Hatfield testified, in rebuttal, that he had a talk with Robinet after the latter went around the boundary, and Robinet remarked "that is the best boundary I ever saw."

Upon this evidence we see no reason to disturb the finding of the jury. While certain inconsistencies in the evidence of appellees' witnesses are pointed out, they go only to the credibility of the witnesses, and their credibility was a question for the jury. If, as a matter of fact, the boundary was not marked, this, it seems to us, could have been shown by witnesses other than those whose interest had been purchased by appellant. If anything, the weight of the evidence is with appellees, and it can not, therefore, be said that the finding of the jury is flagrantly against the evidence.

This suit was originally brought against Joseph Hatfield, Jr., America Hatfield, Elizabeth Hatfield, Thomas Hatfield, Julius Hatfield and Anderson Smith. The defendants, Joseph Hatfield, Jr., America Hatfield and Thomas Hatfield answered and alleged that they were the owners of the land in controversy; while Julius Hat-

field and Anderson Smith were only hired hands engaged in cutting timber therefrom. Elizabeth Hatfield was the mother of the defendants who answered and the widow of their father and her interest ceased upon her death. Just before final judgment was rendered plaintiff below purchased the interest of Thomas Hatfield and America Robinet, formerly America Hatfield, and judgment was rendered against them in favor of plaintiff. This left only one defendant to the action who claimed any interest in the land. Upon the return of the verdict by the jury, the court disregarded the judgment theretofore entered in favor of plaintiff against Thomas Hatfield and America Robinet, and adjudged that Joseph Hatfield, John Hatfield, Nancy Hatfield, Jacob Hatfield and J. P. Hatfield were the owners of the land in controversy, although the last four named were not parties to the action. For this reason the judgment is erroneous. The effect of the verdict was that Thomas Hatfield, Sr., and those claiming through him, had obtained title to the land by adverse possession. The court should have rendered judgment in favor of plaintiff against Thomas Hatfield and America Robinet for whatever interest they had in the land, and the petition should have been dismissed as to Joseph Hatfield, and he should have been adjudged to be one of the owners of the land, thus leaving for future determination the question as to what interest plaintiff acquired by virtue of the purchase from and judgment against Thomas Hatfield and America Robinet, as well as what interest each of Thomas Hatfield's heirs and devisees had in the land in question.

Upon a return of the case, the lower court upon proper application will enter judgment as above indicated and, upon bringing the other heirs and devisees before the court, will proceed to determine their respective interests, as well as the rights of the plaintiff by virtue of his purchase and judgment, in and to the property in controversy.

Judgment reversed and cause remanded for proceedings consistent with this opinion.