## Chesapeake & Ohio Railway Co., et al. v. Shepherd, Admr. of the estate of George Snyder, deceased.

(Decided April 23, 1913.)

## Appeal from Greenup Circuit Court.

1. Master and Servant—Safe Place to Work—When Master Under No Obligation to Furnish Servant Safe Place to Work.—Where the servant is employed to put a place in safe condition for himself and others to work, no obligation rests upon the master to furnish the servant a safe place to work.

2. Master and Servant—Safe Place to Work—When Servant Permitted to Rely Upon Judgment of Master.—Where both the master and servant knew that the safety of the structure had been

questioned, but after a test made in the presence of the master
he assured the servant that the structure is safe   the servant
under such circumstances had a right to rely upon the judgment
of the master instead of his own.

3.  Master and Servant—Assumed Risk.—The doctrine of assumed
risk in this State is not usually applied where the   master is
present in person and giving directions unless the danger is so
plain and obvious that any ordinarily prudent man would be justi-
fied in refusing to carry out the orders of his master.

4.  Master and Servant—Safe Place to Work—Rule in This State as
to Duty of Master to Provide.—The rule in this State is that when
the place in which the servant is engaged in working is not such
as imposes upon the master the full duty of providing a safe place.
but is somewhat hazardous or dangerous, although not obviously
so, or the danger of continuing is not so apparent that a person
of ordinary intelligence would not undertake it, and the servant
is assured, in substance or effect, by the master, who is present,
that it is reasonably safe, or that there is no danger, or is directed
by him to go on with the work, the servant may recover for in-
juries received, although the risk or hazard in prosecuting the
work is as well known to the servant as it is to the master.

WORTHINGTON, COCHRAN & BROWNING for appellants.

DINKLE & PRICHARD and PROCTOR K. MALIN for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

In August, 1909, George Snyder was a member of a
carpenter crew employed by The Chesapeake & Ohio
Railway Company, and under the direction of E. E. Bell,
its foreman, in erecting a scaffold upon the   ventilator
over the blacksmith shop of the railway company   in
Covington, Kentucky.

There are a number of shops owned by the company,
the roofs of which are all joined; and over the roof of
the blacksmith shop is a ventilator about ten feet high
and twelve feet wide, the sides of which were made of
slats so that the air might circulate through them.

The purpose of erecting the scaffold was to enable
the workmen by standing on it to remove the old roof
from the ventilator and put on a new one; and the scaf-
fold was intended as a place for them to stand while
doing this work.

The scaffold was being constructed by running six-
teen feet boards through from one side of the ventilator
to the other, the width between the slats in the sides of
the ventilator being sufficient for this purpose, and the

boards when run through extended about two feet on each side; and along these ends on each side was placed a running board resting on the ends of the boards, and running parallel with the ventilator, and upon which the men were to stand.

Decedent was on the main roof of the blacksmith shop and engaged in passing the planks up to two of his fellow workmen who were hanging on to the sides of the ventilator, and pushing the planks through from one side of the ventilator to the other. When the last plank for one particular section had been run through from one side of the ventilator to the other, and decedent had passed up another plank to his fellow workmen to lay along side on the projecting ends of the planks and parallel with the ventilator, it was observed that the last plank which had been run through the ventilator stuck out further on the side where they were working than the other boards, and it was suggested by some of the workmen that it might not be through on the other side; and thereupon decedent started to go around the end of the ventilator to the other side to ascertain whether the plank was sufficiently through on that side to be safe, and just then one of his fellow workmen took hold of the end of the plank which was protruding on the side where they were, and swung his weight upon it.

Thereupon the foreman who was standing near them called to the decedent and said that it was all right and to go ahead. Upon this assurance the workmen who had swung his weight upon the end of the plank, proceeded to get upon the scaffold and Snyder followed him.

As soon as the last named got upon the scaffold it collapsed, whereupon he fell first to the main roof of the blacksmith shop and rolled off of that roof on to the ground, falling in all something like thirty feet.

He was bruised and crushed, and his back broken. He was taken to the hospital where he remained a few days, and thence to his home in Greenup County where he died on the 27th of January, 1910.

From the time of the injury he was paralyzed from his waist down, and suffered great pain.

Before his death he instituted this action to recover for the pain and suffering, and the reduction of his power to earn money; and after his death it was revived in the name of his administrator, who upon the trial re-

covered a verdict for $12,000, and from this verdict the railway company and Bell, the foreman, appeal.

This plank, which it turned out had not gone all the way through the ventilator, was braced on the side where they were at work by a piece running diagonally from the end of the plank down to the sill of the ventilator, and this brace was nailed where it joined the plank by Carver, and was nailed where it joined the sill by decedent; it is shown that the sill was dry rotted, and that the nail driven by the decedent did not hold and that he knew this, but the evidence further shows that this brace rested directly on the sill, and that it was immaterial whether it was nailed at all or not, and that it was just as much protection without the nail.

The decedent was forty years of age, strong, healthy and vigorous, had never been seriously ill in his life, and worked regularly, and received $2.50 per day as wages.

The court properly instructed the jury that the defendants were under no obligation to furnish the decedent a safe place to work; that under the circumstances in this case where the servant was employed to put a place in safe condition for himself and others to work, no such obligation rested upon the master. Boyd v. Crescent Coal Co., 141 Ky., 787; Williams Coal Co. v. Cooper, 138 Ky., 293.

Manifestly the whole case must be determined upon whether or not the servant had the right to rely upon the assurance of the safety of the scaffold by the foreman, and whether or not the danger was so obvious as to justify the servant in permitting the master to substitute his, (the master's) opinion, for that of the servant.

It is perfectly clear from the evidence that there had just been some discussion between the three workmen immediately engaged in erecting the scaffold as to whether the last plank had gone through on the other side, and it is equally as clear that the foreman while not immediately present was near enough to know, and did know, that some such question was being discussed between them; and if the decedent after having noticed that such condition might exist, and thereby the scaffold made unsafe, had gone upon the same without the direction or assurance of safety from the foreman, he would have had no right of recovery, and a peremptory instruction would have been justified. But just as this discussion was going

on between the three workmen. and just as the decedent was starting around on the other side of the ventilator to ascertain for himself what were the conditions on that side as to that plank, one of the other workmen, with the purpose of testing the safety of that plank as to whether or not it had gone through on the other side, swung his weight upon it, and immediately thereafter, the foreman, evidently basing his judgment on the test so made by the other workman, stopped the decedent from going around on the other side to ascertain for himself, and assured him that the scaffold was all right, and directed him to go on; so that we have a case where both the master and the servant knew that the safety of the structure had been questioned, and after a test made in the presence of the master, he assures the servant that the structure is safe; shall the servant under such circumstances be permitted to substitute for his own judgment that of the master, and rely upon the presumptive superior knowledge of the master?

If the decedent had known that the plank had not gone through on the other side of the ventilator, then he would not have been justified in permitting the master to substitute his judgment for his own, and the danger would have been so obvious as that an ordinarily prudent man would not have gone upon the scaffold even when directed by his master to do so; but none of the parties knew that the plank had not gone through on the other side, and the test made by the workman swinging his weight upon the end of the plank, if it satisfied the master that the plank had gone through on the other side, and that therefore the scaffold was safe, the servant was justified in going upon the scaffold when so assured by the master and directed to do so.

The doctrine of assumed risk in this State is not usually applied where the master is present in person and giving directions unless the danger is so plain and obvious as that any ordinarily prudent man would be justified in refusing to carry out the orders of his master. In the City of Owensboro v. Gabbert, 135 Ky., 346, this question is fully discussed, and the rule in that case is clearly and accurately laid down. There the court said:

"It thus appears that appellee, although not sure that the place was dangerous, felt some uneasiness about it and made the inquiry above set out to his foreman,

Woods, whom, in effect, assured him there was no danger.

"It cannot be said that the place was so obviously dangerous that no person of common understanding would have continued to work in it, and so the principle announced in Wilson v. Chess-Wymond Co.. 117 Ky. 567, 78 S. W., 453; 25 Ky. Law Rep.. 1655; Shemwell v. Owensboro & Nashville R. Co., 117 Ky., 556, 78 S. W., 448; 25 Ky. Law Rep., 1671; Duncan v. Gernett Bros. Lumber Co., 87 S. W., 761; 27 Ky. Law Rep., 1039, and other like cases, does not apply. The rule in this State is that when the place in which the servant is engaged in working is not such as imposes upon the master the full duty of providing a safe place, but is somewhat hazardous or dangerous, although not obviously so, or the danger of continuing is not so apparent that a person of ordinary intelligence would not undertake it, and the servant is assured, in substance or effect, by the master, who is present, that it is reasonably safe or that there is no danger, or is directed by him to go on with the work, the servant may recover for injuries received, although the risk or hazard in prosecuting the work is as well known to the servant as it is to the master. When the master is present, the doctrine of equal knowledge and assumed risk, that is sometimes invoked in cases like this to relieve the master, should be sparingly applied. The position of the two is very different, and out of this difference grows the right of the servant to depend upon the master, if he be present directing the work, as he has a right to presume that he will warn him of danger and save him from needless exposure to injury or death."

The court in that opinion quoted from Sherman & Redfield on Negligence, Sec. 186, and from Western Union Telegraph Co. v. Holtby, 139 Ky., 458, which fully sustain the rule laid down.

The instructions given in this case were exceptionally clear and accurate, and no serious complaint is made of them.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.