## North East Coal Company v. Hunley.

(Decided March 26, 1915.)

### Appeal from Johnson Circuit Court.

1. Master and Servant—Assumption of Risk.—The defense of assumed risk is not available where the master or vice-principal is present in person, directing and supervising the work; when after the safety of proceeding with the work has been called in question, the master or vice principal assures the servant that it is safe, the latter has the right to rely upon the assurance of safety and substitute the judgment of the principal for that of his own in spite of misgivings upon his part, unless the danger is so obvious and imminent as that no reasonably prudent man would undertake it, even under the positive orders of his master.

2. Master and Servant—Assumption of Risk.—This rule is applied to experienced workmen as well as to youthful and inexperienced workmen; it is based, not upon the experience or inexperience of the workman, but upon the natural dependency of the workman upon his employer, and the relations they sustain to each other.

HAGER & STEWART and H. S. HOWES for appellant.

FOGG & KIRK and W. T. CAIN for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Appellee was employed by appellant as a miner, and on the 11th of December, 1912, while he and other workmen, under the direction of a foreman, were engaged in removing pillars or stumps from a mine, a piece of slate fell on and severely and permanently injured him.

His petition charges the company with negligence in failing to furnish to him the necessary timbers with which to prop the roof of the working place, and in failing to exercise ordinary care in furnishing him a reasonably safe place in which to work, and in requiring him to work in an unsafe place; it is further alleged that the foreman's attention was called to the danger of removing a small natural prop or support which had been left by the workmen in removing a certain pillar, whereupon the plaintiff was assured by said foreman that it was safe to remove the same and directed him to do so, and that he, relying upon said assurance, and in obedience to said direction, continued to work therein for a short time, and was injured.

The answer denied the material allegations of the petition, and in separate paragraphs pleaded contrib-

utory negligence and assumed risk. There was a verdict and judgment for $3,300.00 for the plaintiff, and the company appeals.

On the trial the evidence developed, not only that the necessary timbers and props were furnished, but that it was impracticable to have used any more of them than were already set at the place of the accident.

The vital question in the case is whether, under the facts shown, the doctrine of assumed risk should be applied.

The pillars or stumps which appellee and his coworkers were engaged in removing at the time of the injury are natural supports left in a mine for the purpose of supporting the roof thereof; and when the entry has been worked out or exhausted, these pillars or stumps are sometimes removed for the coal and material that is in them, and it is this work that they were engaged in.

It would seem from the very nature of this work that it was, more or less, hazardous, and the argument for the appellant is that it is not the duty of an employer to furnish a safe place to do hazardous work, and, as a general proposition, this is undeniably true.

But the facts of this case bring it within an exception to that rule; here it is alleged and shown that after the workmen had removed the greater part of the material from the pillar in question, having left only one or two small stumps as natural supports, which the workmen, including appellee, had intended to leave, the foreman directed them to also remove the stumps, and in doing so the injury occurred.

But the facts can best be shown by quoting the testimony.

Appellee on this subject testified as follows:

"Q. Tell the jury how came you to quit work behind number four pillar and go to work on the entry, there in front of number four? A. By the orders of the mine boss. Q. Tell the jury just what occurred at the time you received these orders? A. Mr. Pfenning came in about 12 o'clock on the 10th day of December, and he said, 'You are about done;' I said, 'yes,' and he sat down, and I said, 'Tomorrow you can come in here and have the track men take the track up,' and he says, 'What are you going to do with those two stumps?' And I said, 'I expected to leave them;' and he says, 'Go ahead and take them out.' Q. What stumps? A. On

number four here. And I said, 'Will it be safe to take them out?' And he said, 'Yes, go ahead and take them out.' And he came back on the 11th, a little later in the day, about 1:30 or 2 o'clock, and I had the hole bored ready to shoot it, and I asked him to see how we had cleaned it up, and he said you ought to have gotten a broom and swept up the bug dust, and I said I am ready to fire this shot, and he said, 'Let her go;' and I lit the squib and we all walked out, and then we came back and were loading the cars, and he went away to get the driver to bring some more cars to us, and I had 'kinder' hunched down there, and the slate fell on me. Q. What did you mean the day before when you told Pfenning you were done, or. ready to let up? A. I told him we were ready to start on this loose pillar. Q. You mean number three? A. Yes, sir. Q. That was where you were going to work? A. Yes, sir. Q. Did Mr. Pfenning know that? A. Yes, sir."

The "Pfenning" referred to in this testimony was the foreman, and the witness Nickol, who was present at both of the conversations referred to in the testimony quoted, substantially corroborated appellee's statements. Appellee stated, further along in his evidence, that he relied upon the assurance of safety so given by the foreman, and continued to work there as directed by him.

So that we have a case of a workman engaged in a hazardous undertaking; the calling in question by him of the safety of proceeding further with the work; and assurance by the foreman that it is safe, together with a direction by him to proceed with the work.

The foreman was present when all the work in this pillar had been completed which Hunley thought could be safely done, and when so notified by Hunley he overruled his judgment and directed the workmen to mine out the coal in the two small supports which had been left; he was present the next day when the workmen proceeded to carry out his orders, and was there when the shot was fired, and had just left when the slate fell.

How far a workman may rely upon the judgment and opinion of the master or vice-principal when he is present and directing and supervising the work has been the subject of much litigation, and the rules governing such cases are well defined.

The case of C. & O. Ry. Co. v. Shepherd, Admr., 153 Ky., 350, was where workmen were engaged in build-

ing a scaffold to enable them to remove an old roof and put on a new one; about the time the scaffold was finished its safety was called in question by some of the workmen, whereupon one of them swung his weight upon the suspicious part of the scaffold, and the foreman, who was present, treating this test as a sufficient guaranty of the safety of the structure, directed the workmen to go upon it and proceed with their work. The scaffold fell and killed one of them, and, in an action by his personal representative, the court held that no obligation rested upon the master to furnish a safe place to do such work, but that the servant had the right to rely upon the assurance of safety by the foreman, and, that the danger not being obvious, the workman was justified in substituting the judgment of the foreman for his own, although the safety of the structure had previously been questioned.

The same doctrine is laid down by this court in the case of the City of Owensboro v. Gabbert, 135 Ky., 346, where the court says:

"The rule in this State is that when the place in which the servant is engaged in working is not such as imposes upon the master the full duty of providing a safe place, but is somewhat hazardous, or dangerous, although not obviously so, or the danger of continuing is not so apparent that a person of ordinary intelligence would not undertake it, and the servant is assured, in substance or effect, by the master, who is present, that it is reasonably safe, or that there is no danger, or is directed by him to go on with the work, the servant may recover for injuries received, although the risk or hazard in prosecuting the work is as well known to the servant as it is to the master. When the master is present, the doctrine of equal knowledge and assumed risk, that is sometimes invoked in cases like this to relieve the master, should be sparingly applied."

The case of Long's Admr. v. I. C. Ry. Co., 113 Ky., 806, was where some section hands on the railroad were directed by the section boss to take a hand car and go out on the railroad, although it was known by them that a fast train was at the time past due. Long was killed by a collision with the train. The doctrine was invoked by the railroad company that he knew of the danger before he started on the hand car, and consequently had

assumed the risk.  The court, in answer to that argument, said:

"A servant is not called upon to set up his unaided judgment against that of his superiors.  He may rely upon their orders.  Ward v. Railroad Co., 23 R., 1326, 65 S. W., 2.  As has been well said, the servant's dependent and inferior position is to be taken into consideration; and if the master gives him orders to go on with the work, and the servant is injured, he may recover, unless the work was so obviously dangerous that a servant of ordinary prudence, situated as he was, would not have obeyed.

"In this case Long was a mere laborer.  The section foreman under whose direction he worked represented the master, and it was Long's duty to obey his orders in the usual course of business.  When he received an order it was not his duty to sit in judgment upon its propriety, or to enter into a discussion with him as to the facts upon which it was based.  He had a right to presume that improper orders would not be given, and to assume that the section foreman would not direct him to take risks that were improper.  If he was injured while obeying the orders of his superior and by reason of his negligence, he may recover, unless the risk was such that a person of ordinary prudence, situated as Long was, would not have taken it.  In determining whether Long should have obeyed the orders of his superior, it must be borne in mind that the crew were out on the road, and that if Long had not obeyed he could not have remained with the crew."

The case of Runians v. Keller and Brady Co., 141 Ky., 827, was where a workman had been directed to remove certain debris which had been thrown upon a railroad track by the explosion of dynamite, but objected to doing so upon the ground that the roof of the tunnel had not been scaled where the shots had been made; but the foreman, after making a test of the roof, told him that it was all right and to go ahead with the work.  He was injured by falling stone, and in an action by him the court, after reviewing the authorities extensively, said:

"From these authorities, it is clear that the established rule is that where a servant proceeds under the express orders of his superior in performing an act whereby he is exposed to unusual danger, and sustains

an injury from it, the master is liable, unless the result of the act was realized by the servant, or was so apparent that no man of ordinary prudence, situated as he was, would have undertaken it."

Sherman and Redfield on Negligence, Sec. 186, after stating the same doctrine, says:

"The servant's dependent and inferior position is to be taken into consideration; and, if the master gives him positive orders to go on with the work, under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not obviously so dangerous that no man of ordinary prudence would have obeyed."

But it is suggested by appellant's counsel that this rule should only be applied in the case of youthful or inexperienced workmen, and that, as the evidence showed that appellee was an experienced miner, it has no application in this case. But this distinction is not taken by the authorities; an examination of the rule laid down by Sherman and Redfield, which has been consistently followed by this court in the authorities cited, and many others, will show that no such distinction is made. It rather seems to base the rule wholly upon the natural dependency of the workman upon his employer and the relations which they sustain to each other. For an employe who would arbitrarily refuse to do work which his master thought to be safe would certainly be in danger of losing his employment; in other words, he is justified in substituting the judgment of his master for his own, notwithstanding misgivings of his own, unless the danger is so obvious and imminent as that no reasonably prudent man would undertake it even under the positive orders of the master.

The court correctly instructed the jury that if the foreman said that it was safe to remove the stump which the workmen had left and ordered him to remove same, the plaintiff had a right to rely on such statement, and proceed to do such work so directed to be done by the foreman without assuming the risk.

But it is objected that, under the instructions of the court, a recovery was authorized for the ordinary negligence of the foreman, and that as the accident did not result in death, the plaintiff should not have been permitted to recover except for the gross negligence of his

superior. It is sufficient to say that the doctrine invoked has no application when the master or vice-principal, as in this case, was present and directing the work. The judgment is affirmed.