## Breslin v. Blair.

(Decided March 7, 1933.)

SELLIGMAN, SELLIGMAN & GOLDSMITH for appellant.

HUBBARD & HUBBARD and BRENTON L. METZLER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

In an action for damages for personal injuries sustained by the cave-in of a sewer trench in which he was at work for F. G. Breslin, George Blair recovered judgment for $5,000, and Breslin has appealed.

Appellant had a contract with the city of Louisville to construct a sewer along Lydia street and at the time of the accident the work had progressed to a point near Eastern Parkway. The trench was 3 feet in width and about 17 or 18 feet in depth. The principal part of the excavating was done by a steam power machine known as a "Keystone Excavator." The machine was operated from the surface at the head of the trench moving forward as the work progressed. The ditch could not be so finished with the machine as to be ready to receive the sewer pipe, so picks and shovels were used by workmen to finish and prepare the grade of the bottom of the trench preparatory to laying the pipe. In doing this, the workmen would throw the dirt forward where it would be taken up and removed by a

bucket on the end of the arm or beam of the excavator. Blair was engaged in doing this work when the walls of the trench caved in, covering him and a fellow workman with a great mass of earth. The other workman was killed and Blair sustained serious injuries. Appellant does not seem to question the nature or seriousness of the injuries sustained by appellee, and we shall not attempt to give a detailed statement as to the nature of his injuries except in so far as may be necessary to a proper discussion of some of the grounds urged for reversal.

In appellee's petition filed in the Jefferson circuit court it is alleged that the cave-in and his resultant injuries were due to the negligence of appellant in failing to provide him a safe place in which to perform his work and in not properly bracing the walls of the trench so as to prevent the cave-in and in not furnishing and providing proper timber with which to do the necessary bracing.

In addition to a general denial of the allegations of the petition, appellant, as affirmative defenses, pleaded contributory negligence, assumed risk, and fellow servant; and further that appellant had elected to and was operating under the Kentucky Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.), and appellee had signed a compensation register kept by appellant agreeing to accept the provisions of that act; that after appellee received his injuries, he and appellant agreed in writing that appellee should be paid and compensated under the provisions of the compensation laws of this state, and relying on that agreement, appellant had from January 17 to April 14, 1930, paid to appellee installments aggregating $152.10; that by signing such agreements and accepting such payments appellee was barred and estopped to maintain this action. All affirmative allegations of the answer were controverted by reply, thus completing the issues.

As grounds for reversal, it is argued: (1) That the court erred in not sustaining appellant's motion for a peremptory instruction; (2) that instructions to the jury were erroneous; (3) that the verdict of the jury is flagrantly against the evidence; (4) that the court erred in not requiring the jury to return a separate-general verdict; (5) the admission of incompetent evidence; (6) improper and prejudicial statements made by counsel for appellee in the closing argument before the jury.

The argument that the evidence was not sufficient to take the case to the jury and that the verdict is flagrantly against the weight of the evidence may be disposed of together. The argument that the evidence was not sufficient to take the case to the jury is, in effect, a challenge to the credibility of the witnesses. There is evidence for the appellee to the effect that at the time of the cave-in, the walls of the sewer for some distance back from the machine were unbraced and that some of the bracing that had been done was improper and insufficient. There is considerable evidence bearing on the question of the character of bracing necessary under the conditions that existed in that particular instance. There is evidence to the effect that what is known as picket bracing was being used in this trench. As we understand it, this character of bracing is done by putting in and bracing a single piece of timber or board at intervals. Some of the witnesses who by training and experience were qualified to speak on this question indicated that for a ditch of the depth of this one and in the character of soil along Lydia street, picket bracing was not sufficient, but that the bracing should be of solid, well-braced sheeting. Their evidence was also to the effect that it was extremely hazardous and dangerous to work in a ditch of this character with the walls unbraced or improperly braced. It is shown in the evidence that the dirt removed from the trench was piled to a height of several feet along the side and that this added weight and pressure, materially increased the danger of cave-ins. Some question is made as to the practicability of bracing the ditch for some distance back of the excavating machine. There is evidence for appellant to the effect that bracing cannot be done as far back as the beam on the machine reaches because the bracing would interfere with the operation of the beam. However, some of the engineers and men exprienced in construction work, who testified for appellee, stated that the walls could be braced as the ditch went down so as not to interfere with the operation of the machine. There is also a conflict in evidence as to whether it was the duty of appellee to brace the walls as the work progressed and thereby make the place in which he worked safe. He testified that it was not his duty to brace the walls, while, on the other hand, there is much evidence to the effect that it was his duty. He also testified that he protested against working in the ditch where the walls were not

braced, but that Tom Davidson, appellant's foreman in charge of the work at the time, assured him that it was safe and directed him to go ahead with his work. Mr. John F. Lynch was the head foreman for Mr. Breslin in charge of this work, but there is evidence that Tom Davidson also was a foreman or an assistant foreman under Lynch, and that in the absence of Lynch he had full and active authority and control over the work and of the other employees. There is a sharp conflict in evidence, however, on this question. Breslin, Lynch, and others testified that Davidson was not a foreman and was not authorized to act as such in the absence of Lynch or at any time. Davidson testified that he was foreman and was acting as such when the accident occurred; that he hired and discharged employees for Breslin. In this he is corroborated by a number of others.

There is likewise a marked conflict in evidence as to whether appellant furnished adequate and suitable material with which to brace the section of the trench where Blair received his injuries. Davidson was the principal witness for appellee on that question, and stated that there was not sufficient suitable material to properly brace the walls of the trench.

The confusion and conflict of evidence is even greater when it comes to the question of whether Blair signed a register kept by Breslin accepting the provisions of the Workmen's Compensation Act and whether, after the accident, he signed the agreement to accept compensation and the receipts for payment of installments. Blair testified that he did not sign the register nor did he sign the other papers in question. In this he finds strong corroboration. There is, however, considerable evidence of a convincing nature pointing the other way. What purported to be a compensation register kept by Lynch for Breslin was introduced in evidence, and photostatic copies of that and other signatures of Blair are found in the record. A number of such signatures appearing in the record are admitted to be genuine. The register introduced had formerly been kept by Lynch for employees in his service prior to the time he was employed by Breslin. His name appeared at the top of the page as the employer, but this had been scratched out and the name of Breslin substituted. This register was not kept at the office nor at the place where the work was being performed,

but was located by Lynch in a drawer at his home some days after the accident. Three or four men whose names appear on the same register testified that they did not sign it. Tom Davidson stated that after the accident, he saw Lynch sign the name of Blair and of Nally, who was killed by the cave-in. A number of witnesses stated that they were called upon to sign the register a few days after the accident, but there is some question as to the particular register signed by them. Lynch testified that Blair did sign the page of the register introduced in evidence. Mr. Sturgeon, who for a number of years had been connected with a large bank in Louisville and had made a study of handwriting and whose duties were to pass on the genuineness of signatures to commercial papers, was shown the signature on the register, and the signature on the other registers purported to have been signed by appellee and also the signature of appellee as written by him while on the witness stand. He gave as his opinion that the signature on the register was in the handwriting of Blair. Dr. Block testified that he witnessed Blair's signature to the first receipt for compensation paid under the agreement introduced in evidence. Although his signature and that of Blair are in different colored ink, the witness explained this by the statement that the ink in the pen gave out and another color ink was procured for the other signature.

Evidence shows that the checks made to Blair for compensation were delivered to his divorced wife, who cashed them and used the money. There is evidence to the effect that at the time Blair is alleged to have signed the agreements and receipts, he was in a semi-conscious condition and in such a mental state that he could not comprehend or understand the import of these writings, if, in fact, he was able to sign them. But there is a conflict on this point also.

As hereinbefore pointed out, there was a conflict in evidence as to whether it was the duty of appellee to do the bracing and thereby make safe the place in which he was required to perform his work, and while it may be said that the preponderance of the evidence is to the effect that it was a part of his duties, however, in view of the conflict, it cannot be said that appellee failed to sustain his theory of the case.

On the question of assumed risk there is evidence

that Davidson was a foreman at the time, actively in charge of the work, had authority over appellee, and gave him assurance as to his safety in proceeding with his work. Without going into other phases of the doctrine of assumed risk, it may be said that it is not usually applied in this jurisdiction where the master, or any one authorized to act for him and who is superior in authority, is present and giving directions to the employees accompanied with assurances of safety. City of Owensboro v. Gabbert, 135 Ky. 346, 122 S. W. 178, 135 Am. St. Rep. 462, 21 Ann. Cas. 705; C. & O. Ry. Co. v. Shepherd, Adm'r, 153 Ky. 350, 155 S. W. 735; North East Coal Co. v. Hunley, 163 Ky. 817, 174 S. W. 732. While the servant does assume such risks as are necessarily incident to the employment, he does not assume such risks as are incident to the master's negligence in failing to furnish him a reasonably safe place in which to work. Fluehart Collieries Co. v. Elam, 151 Ky. 47, 151 S. W. 34.

Under a well-established and recognized rule of this court, the verdict of a jury may not be disturbed merely because a jury at their discretion elected to accept the evidence of one witness or set of witnesses as against that of another set. It is peculiarly the province of the jury to consider and weigh the conflicts and inconsistencies in the evidence of a given witness. L. & N. v. Shroader (Ky.) 113 S. W. 874; Lawson v. Hatfield, 145 Ky. 779, 141 S. W. 36; Brumfield v. Consolidated Coach Corp., 240 Ky. 1, 40 S. W. (2d) 356; Keen v. Osborne, 185 Ky. 647, 215 S. W. 798. As has been pointed out, there is a conflict on every issue presented in this case, and in such circumstances the verdict of the jury will not be disturbed even though the appellate court might have found differently if it had been its province to determine that question. City of Newport v. Schmit, 191 Ky. 585, 231 S. W. 54. This court has consistently refused to disturb a verdict because of a conflict in evidence unless it appears to be so overwhelmingly against the weight of evidence as to indicate that the jury was actuated by improper motives or passion or prejudice. C., N. O. & T. P. Ry. Co. v. Clarke, 169 Ky. 662, 185 S. W. 94; Huff v. Woosley, 184 Ky. 605, 212 S. W. 597; Barren Fork Coal Co. v. Cogar Grain & Coal Co., 225 Ky. 270, 8 S. W. (2d) 399.

A consideration of the entire record leads to the

conclusion that the court did not err in overruling appellant's motion for a peremptory instruction, and notwithstanding the conflict, there is evidence to support the verdict, if the witnesses for appellee are to be believed, and this matter having been determined by the jury in favor of appellee, the verdict will not be disturbed.

Practically the only criticism of the instructions is directed at instruction No. 1. This is based on the theory that there was no evidence of proximate cause, the risk producing the injury being an ordinary incident of appellee's employment, and the master was not under the duty to provide a safe place in this instance. What we have already said disposes of this question.

Mrs. Blair, divorced wife of appellee, testified that a man who represented himself to be an agent for the insurance company delivered three of the compensation checks to her and told her to cash them and use the money. This occurred while appellee was in the hospital. It is urged by appellant that this evidence was incompetent and very prejudicial. No objections were made at the time this evidence was given, and the evidence of this witness on direct and cross-examination covers 47 pages of the record. No objections were made until the evidence was completed, and then counsel moved the court "to exclude all of this woman's testimony about the insurance man coming there." In view of the many answers to questions asked the witness about this and other matters on examination and cross-examination, it is doubtful indeed whether the motion made at the close of the evidence was sufficient to raise the question. However that may be, the error, if any, manifestly did not prejudice the substantial rights of appellant.

In view of the Code provision (Civil Code of Practice sec. 327) with reference to separate-general verdicts, argument that the court erred in not requiring the jury to return such verdict in this instance is without merit. The matter is left to the discretion of the trial judge, and, to say the least, it does not appear that the discretion was abused.

The closing argument of counsel for appellee was taken down and appears in full in the bill of exceptions. In brief for appellant, it is asserted that in this argu-

ment, counsel for appellee suggested to the jury that Breslin carried employer's liability insurance and that such mention of insurance constituted gross misconduct and prejudicial error. A number of cases from this and other jurisdictions are cited in support of this contention. It is highly improper for counsel in argument in personal injury cases to make any reference to the fact that the defendant carries liability insurance or to make statements necessarily carrying the inference that such is the fact. This court has consistently held such information carried to the jury by argument or otherwise to be prejudicial and reversible error. But we have carefully read the entire argument as embodied in the bill of exceptions and find no direct reference to liability insurance nor anything necessarily carrying the implication that such insurance was carried. The only direct reference to insurance related to compensation insurance and that was so involved in this case that reference to it was not improper.

Finding no prejudicial error in the record, the judgment of the lower court is affirmed.

Whole court sitting.