# Robinson v. O'Keefe's Executrix.

(Decided Dec. 15, 1933.)

CHAS. W. MORRIS and OSCAR LEIBSON for appellant.

MACKEY & MACKEY and EUGENE R. ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

This action was brought by Johanna O'Keefe, executrix for the estate of Michael O'Keefe, in the Jefferson circuit court, against M. B. Woodson and William H. Robinson to recover of them for his death, which she charged was a proximate result of their combined negligence while operating on Broadway street, Louisville, Ky., their respective automobiles. A judgment on a trial before a jury was rendered for $5,000 against each of them. Robinson appeals, asserting that the court erred in refusing to direct a verdict in his favor. Also that the verdict is flagrantly against the evidence, and excessive. George Hoffman, sixteen years of age and engaged in selling papers, and Earl Schuetter, an employee of the Western Union Telegraph Company, claim they were present and witnessed the accident in which O'Keefe lost his life, and for which his administratrix has sued. When he met his death, O'Keefe was going

north on Eighteenth street with the traffic light in his favor. At that time Woodson and Robinson were in their cars on Broadway, awaiting the traffic signal, indicating their right to proceed in their cars. At that time other cars were in front of the respective cars of Woodson and Robinson, who were traveling in opposite directions on Broadway. When O'Keefe reached a point about halfway across Broadway, the traffic light changed. Then Woodson in his car passed about four other cars in front of him, turned on the inside or north of the cars in front of him or to his right, when his car struck O'Keefe. To dispose of this case it is unnecessary to further consider the movements of Woodson's car. We shall confine ourselves from this point to a consideration of the movements of Robinson and his car and the actions of O'Keefe. For this purpose we resort to the testimony of Robinson himself. He observed O'Keefe when he was 100 or 150 feet away. Just as he crossed lower Eighteenth street where the signal light was, he saw the green light, but kept going following another car. He followed the car in front 30, 40 or maybe 50, feet. The car in front swerved out to the left, and Robinson claims that he "did not see O'Keefe up to that time"; but, as he states, he "was wondering what he [O'Keefe] was doing out there," and then he "saw O'Keefe out there and he [Robinson] turned to the left going east on the west bound tracks" of the street car "to keep from hitting O'Keefe." When the car in front of Robinson swerved out, O'Keefe "kinda stopped; looked around." At this point Robinson used this language:

"I think he must have seen cars coming both ways —he started to go back to the south bound curbing. He didn't take only maybe two or three steps, and I thought well, he is going back out of the way now, I had my foot on the brake up to that time, was stopping, because I thought if he stood there I was going to stop and let him get out of the way. Then, the next I knew, he started to run across towards the north side, and I thought well, he will make it to that safety zone—I thought he was going to get over; and the next I seen was the car coming from the east going west, and I thought he was going to run in front of that car. Then I started over towards the curb, because I knew he couldn't get out of that fellow's way; but just as I got opposite to

him, I seen he run into the side of this car, and it kind of spun him around—he kind of turned around once, and then he kind of fell over, and I was going about opposite to him when he fell, and I headed over to the curbing and run back, because I was afraid the cars back of him would run over him and not see him—I run back to flag these cars back of me."

These questions are propounded to and answered by Robinson:

"13. What part of the street were you in, Mr. Robinson? A. I was in the street car track when I first seen him; I was in the east-bound street car track, and this car ahead of me was in the east-bound street car track.

"14. Where was Mr. O'Keefe then? A. Mr. O'Keefe was right in the middle of the east-bound car track when I first seen him.

"15. And you kept on going. A. I had my foot on the brake and was practically stopped.

"16. You didn't have your foot on the brake; you had it ready to put on? A. I did have it on.

"17. How close were you to him when the accident happened? A. Well, I wouldn't have been —maybe five or eight, maybe ten feet, because he fell just as I was going over towards the curbing, right opposite to me. If I had come straight I would have hit him.

"18. As you went eastward this other car was coming westward? A. Yes, sir.

"19. How far was your car from Mr. Woodson's car? A. When the accident happened?

"20. Yes. A. I would say maybe 20 feet." His examination continues:

"24. You testified before the Coroner's inquest? A. Yes, sir.

"25. Or the Police Court, I mean? A. Yes, sir.

"26. I will ask you if this question wasn't asked you and if you didn't make this answer: 'Q.

Just tell what was done and how the accident happened? A. I was driving east on Broadway, on the east-bound street car track, and there was a car, I would say, maybe 50 feet ahead of me. Q. An automobile? A. Yes, and I seen this gentleman coming out the street, and I was wondering what he was doing out there, because we had the green light, and I was watching—I thought the first fellow would hit him, the fellow ahead of me—but he run around him; he turned to the left, over the west bound street car track and around this man; and the man walking stopped then and looked up and looked both ways, and must have seen the cars coming and got excited and started to run, and I had my foot on the brake, to be ready to stop, because I didn't know what he was going to do; then I saw this car coming west, and I said, "My God, he is going to be hit by that car, and that will probably throw him in front of me," and I turned to my right, and just as I got practically opposite him he run into the side of this other car.' Did you make that statement? A. What was that?

"28. That I just read to you? A. I think so." When Robinson's own testimony is considered in the light of that of other witnesses, it is clear to our minds that the court correctly submitted to the jury the issue as to him, and the evidence is sufficient to sustain the verdict of the jury. The credibility of the witnesses and the weight to be given to their evidence was for the jury. Fisher v. Fisher's Adm'r, 242 Ky. 262, 46 S. W. (2d) 85. The rule is if there is some evidence in favor of a plaintiff it is improper to give a peremptory instruction. Lexington Ice Co. v. Williams' Adm'r, 236 Ky. 318, 33 S. W. (2d) 14. The plaintiff called Robinson on cross-examination. His testimony must be regarded in determining whether the plaintiff had made out his case, and the propriety of the peremptory instruction requested by Robinson must be determined on the evidence in behalf of the administratrix including the testimony of Robinson and on reasonable inference deducible therefrom. Watkins' Adm'r v. City of Catlettsburg, 243 Ky. 197, 47 S. W. (2d) 1032; C. L. & L. Motor Express v. Lyons, 245 Ky. 611, 53 S. W. (2d) 978; Stober v. Embry, 243 Ky. 117, 47 S. W. (2d) 921; Boggess v. Insurance Co. of North America, 235 Ky. 529, 31 S. W. (2d) 899. Also it is a general rule that if

there is any evidence of negligence proximately causing the accident, the case should be submitted to the jury, and in passing on the right of a defendant to a peremptory instruction this court must view the evidence most favorable to the plaintiff's cause. Lexington Ice Co. v. Williams' Adm'r, supra.

The jury accepted and returned its verdict on the evidence of Robinson himself together with that of other witnesses in behalf of the administratrix. Considering all of the evidence, we are not authorized to disturb the verdict of the jury merely because we might arrive at a different finding on the same facts. S. L. Crook Corp. v. Blackburn, 248 Ky. 543, 59 S. W. (2d) 1; Breslin v. Blair, 249 Ky. 178, 60 S. W. (2d) 337.

It is a well-recognized rule that where a verdict of the jury is flagrantly or palpably against the weight of the evidence it is within our province to reverse and award a new trial. The facts in the instant case do not bring it within this rule, for in our opinion they not only authorize the submission of the case to the jury, but are amply sufficient to sustain its verdict. From these observations it is clear that it is our judgment that Robinson was not entitled to a peremptory instruction and that the verdict of the jury is not flagrantly against the evidence. As respects the assertion that "the verdict is flagrantly excessive," the life of the decedent was taken by the combined negligence of Woodson and Robinson, and the damages assessed by the verdict of the jury against Robinson are $5,000. The argument that the damages as to Robinson are excessive arises out of the fact that the jury awarded damages of $5,000 against Woodson and that Robinson is entitled to have considered the $5,000 against Woodson when determining whether the $5,000 damages assessed against him are excessive. It cannot be disputed that Robinson cannot complain of the verdict of $5,000 against Woodson, and by a parity of reason he cannot claim the benefit thereof to support his insistence that the verdict of $5,000 against him is excessive. Without citing, an examination of the prior opinions of this court, in death cases, will disclose that the verdict of $5,000 against Robinson is in no sense excessive.

Wherefore the judgment is affirmed.