CASE 44.—ACTION BY G. M. GABBERT AGAINST THE CITY OF OWENSBORO.—November 4, 1909.

## City of Owensboro v. Gabbert

Appeal from Daviess Circuit Court.

T. F. BURKHEAD, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Master and Servant—Assumed Risk—Obvious Dangers.—A ditch two feet wide and six feet deep which, a servant was digging through sandy soil when the sides caved in and injured him, was not such an obviously dangerous place of work that one of common understanding would not have continued to work therein, though its walls were not supported in any way.

2.  Master and Servant—Place of Work—Assumption of Risk.— Where the place of work is not such as to impose upon the master the full duty of providing a safe place, and, though somewhat dangerous, it is not so obviously so that one of ordinary intelligence would not work there, and a servant is assured by the master or his representative that there is no danger, or is directed to continue the work, he may recover for injuries caused by the dangerous place of work, though the risk is as open to him as to the master; the doctrine of assumption of risk in case of equal knowledge of the danger not being strictly implied when the servant acts under the master's direction, as he may then rely on the master's judgment.

3.  Master and Servant—Injuries—Assumption of Risk—Place of Work—Work Under Master's Direction.—Where a ditch which plaintiff was digging when it caved was not so obviously dangerous for want of shoring up that one of ordinary

City of Owensboro v. Gabbert.

intelligence would have quit the work, the master was liabile for injuries caused by its caving, where he impliedly directed plaintiff to continue work after plaintiff had called his attention to the probable danger and necessity for bracing it, even if the place was such that plaintiff created the danger in the progress of the work, so that the rule as to a safe place of work would not apply.

4.  Master and Servant—Injuries—Safe Place to Work—Duty to Make Safe—Excavating Work.—While the rule requiring a master to furnish a safe place of work does not apply to many works of construction where the unsafe condition is necessarily made during the progress of the work, the master was bound to make reasonably safe, by shoring the walls, a ditch two feet wide and six feet deep which was being built through sandy soil; such precaution being possible at a slight expense, and the danger from working without it is not being obvious.

R. W. SLACK, City Attorney, for appellant.

## CLASSIFICATION OF QUESTIONS DISCUSSED.

1. Where the work is one of construction, reconstruction, destruction or repair, the master is not charged with the duty of exercising care to discover dangerous or unsafe places, and the risks, incident to the places and kinds of work, are assumed by the servant. Kentucky Block Cannel Coal Co. v. Nanz, 165 Fed., 46, and citations; Armour v. Hahn, 111 U. S., 313, 4 Sup. Ct. 433, 28 L. E. 440; Ballard v. Lees Adm'r, 115 S. W. 732 and citations; Brown v. Electric Ry. Co., 101 Tenn., 252, 70 Amr. St. Rep. 666, and citations; Kranz v. Long Island Ry. Co., 123 N. Y., 1, 20 Am. St. Rep. 716, distinguishing cases where a workman makes the place where he is injured, from cases where the place is made for him.

2. If the work is in and of itself dangerous, the master does not insure against such danger, and the servant assumes the ordinary risks and hazards incident to the character of the work undertaken by him, with knowledge of its dangers, or the defective condition is so obvious that he could have known the danger by the exercise of ordinary care. Wilson v. Chess & Wymond Co., 117 Ky., 567; Shemwell v. Owensboro & Nashville R. R. Co., 117 Ky. 448; Duncan v. Gernert Bros. Lumber Co., 27 Ky. Law Rep. 1039; Chicago Veneer Co. v. Walden, 82 S. W., 294.

3. The court having instructed the jury to the effect that if appellee knew of the danger, or the danger was visible and ap-

parent to him, and he voluntarily continued at work, to find for defendant, the verdict was not sustained by the evidence, or by the law as given by the court to the jury. Appellees own evidence shows he saw the condition of the soil which caused the walls to cave in upon him, saw the walls were not braced, and that he voluntarily continued at work.

4. In this case, where it appeared appellee was constructing a ditch, it was error for the court to instruct the jury that it was the duty of the defendant to furnish him a reasonably safe place to do his work and that he had the right to assume such place was reasonably free from danger, and it was not his duty to look for danger. (Inst. No. 5. Rec. 13.)

5. Plaintiff's action is based upon the allegations in his petition that the ditch in question was dangerous, and its condition was known to defendant and its servants, "or could have been known to them by the exercise of ordinary care."

The court erred (1) in failing to instruct the jury upon that subject and (2) in failing to give the instruction offered by appellant to the effect that defendant is not an insurer of the safety of the place where plaintiff was put to work, and if the evidence does not show defendant, (or its servants, superior in authority to plaintiff,) knew of its dangerous condition, or could by the exercise of ordinary care, have discovered its dangerous condition, to find for defendant. (See Inst. X, Rec. 14-15.)

LEVEGA CLEMENTS and BEN D. RINGO for appellee.

POINTS AND AUTHORITIES.

1. There being no dispute concerning the facts in this case this Court is left to determine the single question of whether or not the facts stated in plaintiff's pleadings and evidence as shown by the record entitle him to a judgment.

Plaintiff was working under the eye of the master and obeying an order, and in the place furnished him in which to work. The undisputed facts show that this place could have been made absolutely safe by the exercise of the smallest care on the part of the appellant. An ommission to do so was actionable negligence. Pfisterer v. Peter & Co., 117 Ky. 501; Cyc. Vol. 26, page 1117; Thompson's Law on Negligence, Vol. 4, sections 3912 and 3913.

2. The instructions of the trial Court are more favorable to the appellant than the law would warrant. Pfisterer v. Peter & Co., 117 Ky. 501; Norfolk, &c., v. Ward (Va.) 24 L. R. A. 717; I. C. R. R. Co. v. Keebler, 84 S. W., 1167; Ashland Coal & Iron Ry. Co. v. Wallace, 101 Ky.; 626; Knoxville Iron Co. v. Pace, (Tenn.) 48 S. W., 235; 4 Am. and Eng. Ency. of Law, 857.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This appeal is prosecuted from a judgment in favor of appellee in an action brought by him against the appellant to recover damages for injuries sustained while in its employment as a laborer digging a ditch.

It appears from the evidence that appellee, under the direction of a superior servant of the city, was engaged in digging a ditch two feet wide and six feet deep in a sandy soil. The ditch was not braced or supported in any way, although it could have been shored up and made safe at little expense, and the sand in the side of the ditch gave way, causing the solid earth on the surface to cave in and fall on appellee. The argument is made in behalf of the city that appellee, who was a man of mature years and ordinary intelligence, knew, or by the exercise of ordinary care could have known, the dangers incident to the employment, which it is said were obvious and that he assumed the risk of being injured in the manner he was; and it is further insisted that, as this was a work of construction, and the dangerous place was being made by appellee in the course of his labors, the rule putting on the master the duty of furnishing reasonably safe places for the servant to work in does not apply. Complaint is also made of alleged errors committed by the court in giving and refusing instructions.

Excepting appellee and the physicians who testified in his behalf, no witnesses were introduced by either party. During the examination of appellee, he was asked the following questions: "Q. Now, Mr. Gabbert, at the time the walls of the ditch caved in,

you knew it was going to cave in? A. Certainly not, or I would not have been in there.  Q. Did you know the danger of its caving in?  A. No, sir; I never worked in such sand and dirt as that before. Q. Upon whose judgment did you rely in that matter?  A. Doc Woods.  Q. You knew Mr. Woods well?    A. Certainly.  Q. And you had been working under him? A. Yes, sir.  Q. You knew he was an experienced man?  A. Yes, sir.  Q. How long had you been digging ditches of that kind and depth?  A.  I don't know as I ever dug any besides that of that kind and depth.  Q. How long had you been digging at six feet in that place?  A. Something like two days, I guess.  It was deeper out there where it caved in than where we commenced.  Q. It hadn't caved in anywhere else, had it?  A. No, sir; that was the first cave-in in that ditch.  Q. Could you see anything more about that soil than the shape of that ditch, or know anything more about it than Mr. Woods could see? Was there anything he could see or know about it that you could not see or know?  A. I can't say anything about that.    Mr. Woods should have understood his business and known the disposition of the soil.  Q. Did you see that sand crumbling?  A. No, sir; I didn't see any sand crumbling.  I was cleaning up the bottom of the ditch when it caved in, and I don't remember watching it.  Q. You received all of your orders from Mr. Woods, did you?  A. Certainly.  Q. Did anybody else about the work have authority to give orders  to  the men except Mr. Woods?  A. No, sir.  Q. Did you have any warning at all before it caught you?  A. No, sir; none at all. Q. What, if anything, had you said to the foreman about the ditch?  A. I just remarked to Mr. Woods, who was 10 or 12 feet behind me, awhile before that

happened, that I thought it ought to be braced, that there was sand there, and he said, 'Maybe we will get through without it,' and just went on that way.''

It thus appears that appellee, although not sure that the place was dangerous, felt some uneasiness about it and made the inquiry above set out to his foreman, Woods, who, in effect, assured him that there was no danger. It cannot be said that the place was so obviously dangerous that no person of common understanding would have continued to work in it, and so the principle announced in Wilson v. Chess-Wymond Co., 117 Ky. 567, 78 S. W. 453, 25 Ky. Law Rep. 1655, Shemwell v. Owensboro & Nashville R. Co., 117 Ky. 556, 78 S. W. 448, 25 Ky. Law Rep. 1671, Duncan v. Gernett Bros. Lumber Co., 87 S. W. 762, 27 Ky. Law Rep. 1039, and other like cases, does not apply. The rule in this state is that when the place in which the servant is engaged in working is not such as imposes upon the master the full duty of providing a safe place, but is somewhat hazardous or dangerous, although not obviously so, or the danger of continuing is not so apparent that a person of ordinary intelligence would not undertake it, and the servant is assured, in substance or effect, by the master, who is present, that it is reasonably safe or that there is no danger, or is directed by him to go on with the work, the servant may recover for injuries received, although the risk or hazard in prosecuting the work is as well known to the servant as it is to the master. When the master is present, the doctrine of equal knowledge and assumed risk, that is sometimes invoked in cases like this to relieve the master, should be sparingly applied. The position of the two is very different, and out of this difference grows the right of the servant to depend upon the master, if

he be present directing the work, as he has a right to presume he will warn him of danger and save him from needless exposure to injury or death.

In Shearman & Redfield on Negligence, Sec. 186, this idea is well expressed in the following language: "The true rule in this as in all other cases is that, if the master gives the servant to understand that he does not consider the risk one which a prudent person should refuse to undertake, the servant has the right to rely upon his master's judgment, unless his own is so clearly opposed thereto that in fact he does not rely upon his master's opinion. So, if the peculiar risk of the act commanded by the master is not obvious, the servant has the right to assume that he is not sent into any unusual peril, and is not bound to investigate into the risk, before obeying his orders. A servant is not called upon to set up his own unaided judgment against that of his superiors, and he may rely upon their advice, and still more upon their orders, notwithstanding many misgivings of his own.     *     *     *     The servant's dependent and inferior position is to be taken into consideration, and if the master gives him positive orders to go on with the work under perilous circumstances, the servant may recover for an injury thus incurred, if the work was not inevitably or immediately dangerous." So that, if we should put this case upon the ground that the servant was engaged in a work of construction, and was himself by his labor making the danger, and hence the strict rule for the protection of the servant in respect to safe places should not be applied we would yet feel obliged to say that the master in this case made himself liable by his implied direction to the servant to go on with the work after his attention was directed by the servant to the prob-

able danger and the necessity for shoring or bracing. As said in Western Union Telegraph Co. v. Holtby, 93 S. W. 652, 29 Ky. Law Rep. 523, a case in many respects like the one at bar:

"There are exceptions to the rule that relieved the master from liability when the servant is injured by appliances or tools or unsafe places, when the danger is one that might have been discovered by the servant by the exercise of ordinary care. Among them, and applicable to the facts in this case, is the doctrine that, although an appliance, tool, or place may be unsafe, and the danger discoverable by reasonable or ordinary inspection, yet if the master is present and orders the servant to perform the duty, or the servant depends on the master's presumed knowledge of the defective appliance or unsafe place, or relies on the master's inspection of the premises, and acts under his immediate direction, the master will be liable."

But, aside from this, the character of the work, although constructive, was not such as to relieve the master from the duty of making it reasonably safe. There are a great many works of construction in which it would not be practicable for the master to keep a safe place in which the servant could work while engaged in the undertaking; the nature of the work being such that a continual change is going on with which the servant must familiarize himself and take such precautions as are necessary to avoid accident or injury. To this class of constructive work a lower standard of liability on the part of the master, and in many cases no liability, will be applied than in cases where the work has been finished and is being used in the ordinary conduct of the business. Bailey

on Master & Servant, Sections 29, 267; Ballard & Ballard Co. v. Lee (Ky.) 115 S. W. 732.

But where an excavation like the one involved in this case is being made, and there is danger that the walls may cave in, and this is or should be in the exercise of ordinary care known to the master, and can easily and with little expense be obviated by shoring them up, there is no reason why the duty of the master to furnish the servant a reasonably safe place in which to work should not be applied in its fullest extent, unless the danger is so obvious that a person of ordinary intelligence would not undertake it. This doctrine is well supported by numerous authorities, among which we may mention Thompson on Negligence, Secs. 3912, 3913; Bailey on Master & Servant, Sec. 98; American and English Encyclopedia of Law, vol. 20, p. 59; 26 Cyc. 1178; Welch v. Carlucci Stone Co., 215 Pa. 34, 64 Atl. 392, 7 Am. and Eng. Ann. Cas. 299.

As the instructions given by the court conformed to our views of the law applicable to the case as we have expressed them in this opinion, and the verdict is not excessive, the judgment of the lower court must be affirmed, and it is so ordered.