## Proctor Coal Company v. Crabtree.

(Decided April 24, 1917.)

Appeal from Whitley Circuit Court.

1. Master and Servant—Safe and Unsafe Way of Doing Dangerous Work.—If there is a safe way and an unsafe way of doing dan-

gerous work, and the master directs the servant to do the work in the unsafe way, and the servant does not understand and appreciate the danger attending the unsafe method which he has been directed to follow by the master, and it is not so obvious as to charge the servant with notice, the master should be liable for an injury sustained by the servant in the progress of the work on account of the unsafe plan adopted, if the servant was in the exercise of ordinary care for his safety.

2.    Mines and Mining—Safe and Unsafe Way of Removing "Stumps" and "Pillars"—"Creep" of Mountain.—It is a well known fact in coal mining affairs that a mountain from which the coal has been taken will "creep" or tilt toward the mouth of the mine unless the "stumps" and "pillars" left to support the roof of the mine are taken out in the proper way; and where the mine owner adopts an unsafe plan of removing the "stumps" and "pillars," and this unsafe plan causes the mountain to "creep," thereby forcing out of the roof bodies of slate, he will be liable in damages to a miner who has been injured by the falling slate.

TYE, SILER & GATLIFF for appellant.

ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Crabtree was very seriously and permanently injured by falling slate while working in a mine of the coal company, and in this suit to recover damages for the injuries sustained, there was a judgment in his favor for twelve hundred dollars. The coal company asks a reversal upon the ground that the trial court should have directed a verdict in its favor, or, if not, that a new trial should have been granted because the verdict was flagrantly against the evidence.

Crabtree, a skillful miner of many years' experience, was engaged in the work of taking down one of the "stumps" in the main entry that had been left for the purpose of supporting the roof. He understood very well that the danger of doing work like this was much greater than the hazard that attends ordinary mining, but he had done this work, which was called "robbing the mine," before, and on account of the danger attending the work received higher wages than was paid the miners generally. He had been working at the stump at which he was injured perhaps a day or so before the slate fell. He was furnished with plenty of props and had used as many of them as it was practicable to use. It also appears from his uncontradicted evidence that shortly before the slate fell he examined and inspected according to the usual

methods the roof and found it to be all right, but notwithstanding this inspection a large piece of slate fell from the roof and struck him.

His cause of action is not put upon the usual ground that the coal company did not furnish him a safe place in which to work, because he knew very well that the place was dangerous, nor is there any complaint that the mine was not in good condition, or that the appliances furnished him were not sufficient. But is rested on the ground that the plan or system adopted by the coal company for removing the stumps and pillars in its mine was a dangerous and improper plan or system, which fact was known to it, but was unknown to him, and practically all of the evidence in behalf of Crabtree was directed to showing the dangers attending the plan adopted by the company of removing stumps and pillars; and that on the part of the company to showing that the plan or system it practiced was a safe as well as the customary plan in use in well-equipped mines.

It seems that in taking coal from the rooms in a mine pillars of coal are left standing short distances apart for the purpose of supporting the roofs of the rooms; in other words, to keep the roofs of the rooms, which usually consist of slate or rock, from falling down; that in addition to these pillars that are left in the rooms supports of coal called stumps are left along the main entries. These stumps in this mine were about sixty feet long and twenty feet wide and supported the roof of the mine along the entries where they were located. It further appears that after all available coal in the mine has been exhausted, except such as remains in these pillars and stumps, miners are set to work, "robbing the mine"; that is, taking down the pillars and stumps which contain in large mines a great quantity of coal. The pillars in the rooms are first taken down and then the large stumps along the entries are removed.

In this mine at the time Crabtree was injured the pillars had been taken out of the rooms, and nothing was left to support the roof except the stumps along the entry. It also appears that after the coal in a mine has been taken out and the pillars in the rooms removed, the mountain over the rooms and entries has a tendency to "creep," due to the tremendous pressure above, and to the fact that the supports of the roof, which also hold the mountain in place, have been taken away. And this tendency is so much increased as to become a settled fact

when the stumps are being removed unless their removal is accomplished in the proper way. As we gather it from the record, under this creeping process the normal or usual condition of the roof of the mine is changed and the substances composing it are crushed together by the awful weight of the mountain so as to cause large pieces of slate and other substances to be crowded out of their natural place in the roof and fall to the bottom of the mine.

It is the theory of Crabtree that this creeping process of the mountain crowded out of its natural place the large piece of slate in the roof over the point where he was working, causing it to fall; and it is his further theory that the plan or system adopted by those in charge of the mine in removing the stumps assisted the mountain in this creeping process and produced the fall of slate that injured him. Upon these points, around which all the evidence in the case centers, it is shown by the evidence for Crabtree that he was directed by the foreman of the mine where to begin work, what stumps to begin work on, and how much coal to take out of each, and that he had worked on four stumps and was working on the fifth when he got hurt. That he had taken out of the four stumps he had worked on about a third of the coal, leaving the remainder of it standing; and further shown that the coal was not taken out of these stumps in any regular or uniform way, but that when he had taken out of each stump the quantity of coal directed by the mine foreman, he would quit that stump and go to the next one and take out of it such quantity of coal as he was directed to take out.

Crabtree also testified that while he was an experienced miner, he did not understand or appreciate the danger that came from the "creep" of the mountain if the stumps were left in the manner he was directed to leave them by the foreman. It is further shown by a number of experienced witnesses that the better and safer plan in removing stumps and pillars is to begin at the head of the entry and take all of the coal in each stump, in regular order from the head of the entry to the mouth of the mine, so that the roof may fall in where the stumps are taken out and thus relieve the pressure on the other parts of the roof and prevent the mountain from creeping. But in place of doing the work in this way, the plan we have indicated was adopted by the mine foreman, and a number of expert witnesses, including witnesses introduced by

the coal company, testified that this plan adopted by the mine foreman was unsafe and dangerous.

For example, William Risden, a mine foreman as well as superintendent, and a witness for the coal company, was asked and answered these questions: "Q. Is it proper in pulling these stumps to cut off the end of that stump, to slab off the side of another stump, and so on? A. No. Q. And crop off the corner of another and take part of another? A. No, it is not. Q. Is it not a fact that if you cut off the corner of one stump and the end off of another stump and split another stump and have your support in a zigzag and irregular position, that is an improper method of extracting stumps? A. I always have my men cut around a stump at the back and straight ahead down the entry. As I have said, the only method I find to be safe is to work my stumps from the back and pitch my weight behind. I never carry my weight ahead of me."

Jim Drake, another witness for the coal company, who was an experienced miner and had acted as mine foreman as well as general superintendent and manager, said: "A creep is where you have taken out enough coal for the top to come down and not taken out enough for the top to fall. You have taken out a certain per cent. of the coal and there is enough there yet that it will not allow the top to fall and it gets into a creep. Q. State to the jury if it is the duty of the mine foreman to so operate and direct the system of work in robbing an entry like this as to produce falls and keep the weight behind him as he advances down the entry? A. Yes. Q. Suppose he don't do that, but cuts out only a part of the stumps, leaving the remainder in irregular shapes, would that be a proper method of robbing? A. No, it would not be proper, I don't think."

On the other hand, other witnesses for the coal company who had much experience in mine work and were competent to express an opinion as to the manner in which "robbing" should be done, testified that the method adopted by the coal company was safe and that under the method employed there would not be any creeping in the mountain that would force the slate in the roof out.

All of the witnesses, however, agree that a mountain will creep when the coal has been removed, the pillars taken out and only small and irregular shaped stumps left to support its weight, and that the tendency to creep may be removed by permitting the roof to fall in.

According to the testimony of the witnesses for Crabtree as well as some of the witnesses for the coal company, the safe plan in taking out stumps after the pillars have been removed is to begin at the head of the entry, that is, the farthest point from the mouth of the mine, and take out the stumps as they come, so that the roof where the stumps have been taken out may fall down, thus relieving the pressure on the standing stumps and preventing the mountain from creeping. These witnesses said, in substance, that after the pillars had been removed and several of the stumps at the head of the entry taken out, the roof of the mine at this place would fall down and this would have the effect of steadying the mountain or keeping it in place; but that if the pillars were removed and the stumps partly taken out, the support of the stumps would not be sufficient to hold the mountain in place and it would creep or move towards the mouth of the entry, a good deal in the same way that a heavy leaning body placed on supports insufficient to hold it in place would be disposed to move in the direction in which it was inclined.

This disputed issue of fact as to whether the plan or system adopted by the mine owners was the correct and safe plan was properly submitted to the jury in an instruction telling them that if they believed from the evidence that the plan or system of mining and removing stumps and pillars adopted by the coal company in its mine at the time and place where Crabtree was injured was not reasonably safe, and this fact, if it was a fact, was known to the defendant company and to its mine foreman, or could have been known to it and him by the exercise of ordinary care, but was unknown to the plaintiff, Crabtree, and could not have been known to him by the exercise of ordinary care; and that Crabtree while exercising ordinary care for his own safety, sustained injuries resulting directly and proximately from the failure of the company and its foreman to exercise ordinary care to have and adopt a system and plan in the working place of plaintiff in pulling and removing stumps and pillars which was reasonably safe, their verdict should be for the plaintiff, Crabtree.

It is evident from the record that the jury found for Crabtree under this instruction, and there was sufficient evidence to authorize them to so find and to sustain their finding.

It might further here be said that the falling of this slate could not reasonably be attributed to any other cause than the creep in the mountain, because the roof was tested several times by Crabtree, according to approved methods, and the propping was sufficient to prevent the slate from falling from ordinary causes.

So far as the principle of law is concerned, we think that if there is a safe way and an unsafe way of doing dangerous work, and the master directs the servant to do the work in the unsafe way, and the servant does not understand and appreciate the danger attending the unsafe method which he has been directed to follow by the master, and it is not so obvious as to charge the servant with notice, the master should be liable for an injury sustained by the servant in the progress of the work on account of the unsafe plan adopted, assuming, of course, that the servant was exercising ordinary care for his own safety.

Wherefore, the judgment is affirmed.