## E. J. O'Brien & Co. v. Shelton's Adm'r.

(Decided Dec. 16, 1932.)

538

W. A. BERRY for appellant.

SETH T. BOAZ and GARDNER & McDONALD for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant is a firm engaged in the business of buying, selling, and rehandling tobacco in Kentucky and other states. It owned a tobacco warehouse at Benton, Ky., which it desired to dismantle and ship to Wilson, N. C., where it intended to use the materials in the construction of a building. Some time in April, 1930, E. J. O'Brien, Jr., a member of the firm, called R. F. Pryor by telephone at Mayfield, Ky., and directed him to employ a force of men, take them to Benton, dismantle the building, and load it on cars for shipment to North Carolina. Pryor was a member of the firm of J. L. Sherrill & Co., of Mayfield, which was engaged in the business of buying and rehandling tobacco at that point as the agent of appellant. Pryor was informed that O'Brien & Co., had elected to do the work under the compensation laws of Kentucky, and he was instructed to have the men employed by him to sign the compensation register.

Pryor employed about thirty laborers, among whom were a number of the employees of Sherrill & Co., and informed them of the nature of the work they were to do. He sent the men to Benton on a truck

and he followed in an automobile accompanied by two of Sherrill & Co.'s foremen whom he took along to assist him in superintending the work. Before the work of dismantling the building was commenced, he presented to the workmen a register which all of them signed. It later developed that the appellant had failed to qualify under the Workmen's Compensation Act (Ky. Stat. sec. 4880 et seq.). After their arrival at the warehouse in Benton, the workmen were divided into groups and assigned to different parts of the building with instructions to tear it down. The warehouse was a building about 300 feet in length by 160 feet in width and 30 feet in height on one side and 20 feet in height on the other. It was constructed of wood framing and the sides were covered with sheet, or corrugated iron, in sections about 10 feet long which were nailed to the framing. It is conceded that no inspection of the building was made before the work of dismantling was commenced.

Vodrey Shelton, one of the workmen, was given a crowbar and directed to tear off the iron sheeting and hand it down to men on the outside to be piled on the ground. Shelton had been employed for many years by Sherrill & Co., but had worked occasionally as a carpenter. In performing the work he was directed to do it was necessary for Shelton to climb up on the framing on the inside of the building and knock off the iron sheeting with a crowbar. While he was sitting astride a brace about 25 feet from the ground engaged in the work that had been assigned to him, the brace gave way and he was thrown to the ground. He received fatal injuries and died two days later. He had been engaged in the work about two hours when the accident occurred.

The First National Bank of Mayfield qualified as administrator of Shelton's estate, and, on March 28, 1931, brought this suit against E. J. O'Brien & Co., to recover the sum of $15,000 for the death of its decedent. On the trial the case was submitted to the jury under an instruction which told them that it was the duty of the defendant to use ordinary care to furnish a reasonably safe place for the decedent, Vodrey Shelton, to do the work assigned to him, and that, if they should believe from all the evidence that the defendant failed to use such care and that by reason thereof the building, or any part of it, at the place where decedent was working was not a reasonably

safe place for him to work, and that the unsafe condition, if it was unsafe, was known to the defendant, or could have been known to it by the exercise of ordinary care, and that decedent's injury was brought about by reason of the unsafe condition of the building where he was working, they should find for the plaintiff. The jury returned a verdict for the plaintiff for the sum of $10,000, and from the judgment entered thereon this appeal is prosecuted.

It is appellant's contention that the court erred in refusing to sustain its motion for a peremptory instruction offered at the conclusion of the plaintiff's evidence. It is also insisted that the instruction given by the court, even if the case should have been submitted to the jury, is erroneous. •

A number of witnesses, including carpenters and contractors experienced in the work of dismantling buildings, testified that the proper, usual, and customary method of tearing down a building, such as the one here involved, is to erect scaffolding to enable the workmen to perform the work with greater safety. Appellant's contention that its motion for a peremptory instruction should have been sustained is based on the doctrine that the safe place rule does not apply where the work is necessarily hazardous and conditions are constantly changing during the progress of the work.

In Ballard & Ballard Company. v. Lee's Administrator, 131 Ky. 412, 115 S. W. 732, 735, Lee was one of the workmen employed by Ballard & Ballard Company to remove the roof from a building preparatory to enlarging the building. While engaged in this work, Lee fell through the roof to the ground and was killed. It was held that an experienced employee who undertakes the work of wrecking a building, which is necessarily dangerous, assumes the ordinary risk incident to the employment and that the master is not bound to exercise ordinary care to discover the danger. In the course of the opinion it was said:

"The duty of the master in reference to safe places and premises cannot, in the very nature of things, have any application to employments like this, and hence the rules regulating and controlling the liability of the master in this particular have no place."

In Standard Oil Company of Kentucky v. Watson, 154 Ky. 550, 157 S. W. 929, a workman, while engaged in tearing down a building, was injured under circumstances very similar to those of the instant case, and it was held that a master engaged in the hazardous business of tearing down old buildings is not required to exercise even ordinary care to discover dangerous defects. In Dyer v. Pauley Jail Building Company, 144 Ky. 592, 139 S. W. 789, 790, a workman engaged in tearing down an old jail was injured by being struck by a strip of iron sheeting which fell when the rivets holding it in place were cut. In affirming a judgment for the master, it was said:

> "It was impossible for the appellee to furnish him a safe place to work, for the very work that was being undertaken rendered the place unsafe. Appellant must have known, and did know, that when the bolts were cut and the rivets driven from their places the pieces of sheet iron were liable to and naturally would fall."

In none of these cases was it claimed that the work was not being done in the usual and customary way employed by reasonably prudent men engaged in similar work.

The rule announced in these and similar cases that a person engaged in the dismantling of a building is not bound to furnish his workmen with a safe place to work is a generally recognized principle, but it does not follow that the master is absolved from all duties to his employees. The work of dismantling a building is necessarily hazardous and the conditions are constantly changing as the work progresses which precludes the master from always anticipating the dangers as they arise. While the master cannot be held liable for failing to furnish a safe place, when the place itself is being demolished or repaired, yet if he adopts a method for doing the work which is hazardous when a safer method is available and the employee is injured by reason of the master's failure to adopt a safer method, the master is liable. It is his duty to adopt a reasonably safe method of doing the work, although the work is essentially of a hazardous nature. The rule that the safe place doctrine is not applicable where the conditions of work must of necessity be constantly changing, as in the dismantling or construction of a building, is usually broadly stated

in language similar to that heretofore quoted from the opinion in the Ballard Case. Some of the cases from other jurisdictions in which the doctrine is thus broadly stated are: McParland v. Stewart, 244 Mich. 565, 222 N. W. 191; Walker v. Ginsburg, 244 Mich. 568, 222 N. W. 192; Boisvert v. Ward, 199 Mass. 594, 85 N. E. 849; Walaszewski v. Schoknecht, 127 Wis. 376, 106 N. W. 1070; Chesapeake & Ohio Railway Company v. Hoffman, 109 Va. 44, 63 S. E. 432; Rumbley v. Southern Railway Company, 153 N. C. 457, 69 S. E. 416; Hanley v. Carnegie Steel Company, 256 Pa. 44, 100 A. 543; St. Louis I. M. & S. Railway Company v. Baker, 110 Ark. 241, 163 S. W. 152.

In most of these cases the servant himself had created the danger during the progress of the work. That was not the case here. There is some effort to draw the conclusion from the evidence that Shelton created the danger when he loosened the section of iron sheeting on the theory that he at the same time removed the support of the brace upon which he was sitting, but the evidence is not susceptible of this construction. The brace, which was 2 inches by 6 inches and 26 inches in length, was nailed, or toed in, to a window frame and was insecurely fastened. It had no connection with the iron sheeting. It was not a danger created during the progress of the work but one that existed before the work commenced.

It would be an inhumane doctrine to hold that a master is absolved from every duty to safeguard his workmen merely because they are engaged in hazardous work. In every case he must exercise reasonable care for the safety of his employees. What is reasonable care may vary with the circumstances. If the master merely sent an experienced workman to demolish a building and did not undertake to supervise the work in any manner but left the method to be employed to the workman, the rule contended for by appellant would undoubtedly apply. Here the appellant was represented by an agent who employed two foremen to assist him in superintending the work. He and the foremen divided the men, supplied them with tools, and instructed them where to go and what to do. If a method of performing the work was selected which enhanced its hazards, or if appellant failed to adopt a method or plan of doing the work, which was customarily and usually employed by reasonably pru-

dent persons engaged in similar work, then it failed to perform a duty it owed to decedent, and, if by reason of its violation of this duty the accident occurred, it is liable.

In City of Owensboro v. Gabbart, 135 Ky. 346, 122 S. W. 178, 180, 135 Am. Stat. Rep. 462, 21 Ann. Cas. 705, a workman, who was engaged in digging a ditch through sandy soil, was injured when the sand in the side of the ditch gave way and fell on him. The master was held liable for failing to brace, or shore up, the walls of the ditch in order to protect the workman during the progress of the work. The court said:

"The character of the work, although constructive, was not such as to relieve the master from the duty of making it reasonably safe. There are a great many works of construction in which it would not be practicable for the master to keep a safe place in which the servant could work while engaged in the undertaking; the nature of the work being such that a continual change is going on with which the servant must familiarize himself and take such precautions as are necessary to avoid accident or injury. To this class of constructive work a lower standard of liability on the part of the master, and in many cases no liability, will be applied than in cases where the work has been finished and is being used in the ordinary conduct of the business. Bailey on Master & Servant, secs. 29, 267; Ballard & Ballard Co. v. Lee, 131 Ky. 412, 115 S. W. 732.

"But where an excavation like the one involved in this case is being made, and there is danger that the walls may cave in, and this is or should be in the exercise of ordinary care known to the master, and can easily and with little expense be obviated by shoring them up, there is no reason why the duty of the master to furnish the servant a reasonably safe place in which to work should not be applied in its fullest extent, unless the danger is so obvious that a person of ordinary intelligence would not undertake it."

In Williams v. City of Spokane, 73 Wash. 237, 131 P. 833, a workman was injured while engaged in the construction of a bridge, and it was held that where a plan or method of operation adopted by the master is inherently defective, or unnecessarily dan-

gerous, its adoption is negligence entailing liability on the master for injuries resulting to the servant.

In Clark v. Johnson County Telephone Company, 146 Iowa, 428, 123 N. W. 327, 329, a lineman employed by the telephone company was injured while engaged in repairing a lead of telephone wires which, by reason of a severe sleet storm, had become covered with ice imposing an unusual strain on the poles supporting the wires. The lineman was directed by the foreman to go up one of the poles to cut the wires, and, while so employed, the pole broke and he fell to the ground. In the course of the opinion the court said:

"In a general way, it is contended that the obligation of defendant to furnish plaintiff a safe place of work did not exist in this case, because the place where the plaintiff was working was rendered unsafe in the very employment in which plaintiff was engaged; in other words, that the work of repair in which plaintiff was engaged necessarily involved danger of which he was charged with notice. The well-settled principle invoked did not, however, as we think, relieve defendant from liability if its foreman directed the plaintiff to work under conditions which were to his knowledge as a reasonably prudent man particularly dangerous on account of the failure of defendant to take precautions as to the prosecution of the work which a reasonably prudent employer would have taken for the safety of his employees. While it is true that a servant employed to make a dangerous place safe assumes the risk of the very danger which he undertakes to remove, he does not assume the risk of the method employed in doing such dangerous work if that method is unnecessarily hazardous in respects as to which the employee has no knowledge, provided that in these respects the employment could have been rendered less hazardous by the exercise of reasonable care on the part of the employer."

In Blair v. City of Spokane, 66 Wash. 399, 119 P. 839, 841, a workman was injured while engaged in tearing down a retaining wall. The court, in holding that it was the duty of the master to adopt a reasonably safe plan of doing the work, said:

"The above, however, are sufficient to show the rule properly applicable to the situation con-

fronting us, which as applied to this case means that, while Blair could be said to have assumed the obvious risk incident to the situation in which he was placed, he did not assume the negligence of the city in failing to adopt a reasonably safe method with which to do the work, nor in making his place of work extra hazardous in failing to use a reasonably safe plan to dismantle this wall, or to make such slopes in taking out the fill as would add unnecessary and extra hazards to the work. It was the duty of the city in doing this work, confessedly dangerous and attendant with many risks, to do it in such a way as to reduce the danger to a minimum, and not increase it by careless and negligent methods of operation."

Other cases to the same effect are Mahoney v. Cayuga Lake Cement Company, 208 N. Y. 164, 101 N. E. 802; Reynolds v. Security Trust Company, 246 Mich. 670, 225 N. W. 575; Highfill v. City of Independence (Mo. Sup.) 189 S. W. 801.

An employer is not required to adopt a particular method because it affords greater safety for the employee, but he is required to adopt the usual and customary method employed by ordinarily prudent men in like work under similar circumstances. Where work is extrahazardous, the employer must adopt safe methods to safeguard workmen where such methods are practicable and are customarily used by employers similarly situated.

O'Brien & Co. having failed to elect to do the work under the Workmen's Compensation Act, the questions of assumed risk and contributory negligence have no place in the case. The only questions in the case are, Did O'Brien & Co. owe decedent any duty which it violated, and, if so, Was its resulting negligence the approximate cause of the injury? Faulkner v. Gatliff Coal Company, 228 Ky. 379, 15 S. W. (2d) 236; Nugent Sand Company v. Howard, 227 Ky. 91, 11 S. W. (2d) 985.

There was evidence from which the jury could find that the method of dismantling the building, as directed by appellant in this case, was not a reasonably safe method under the circumstances, and that, by the exercise of ordinary care, a reasonably safe method could have been adopted by erecting scaffolding. The case should have been submitted to the jury

546

on that issue. The instruction given by the court was based on the theory that the safe place doctrine in all its strictness applied, and, in view of the rule announced in Ballard & Ballard Company v. Lee's Administrator, supra, and like cases, this was error, and for that reason the judgment must be reversed.

Judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith. The whole court sitting.