## Gatliff Coal Co. v. Hill's Adm'r.

(Decided Dec. 21, 1934.)

(As Modified on Denial of Rehearing March 20, 1936).

310

TYE, SILER, GILLIS & SILER for appelant.

POPE & UPTON and LESLIE W. MORRIS adn MARION RIDER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

From a $7,500 judgment in favor of the appellee for the alleged negligent killing of his intestate, the Gatliff Coal Company has appealed.

## The Accident.

On Tuesday, October 20, 1931, the Gatliff Coal Company put Ernest Hill to work drawing a pillar between rooms 19 and 20 on the east side of its tenth right entry off of its third main. While he was working on this pillar he was killed, Friday, October 23, 1931, by a large slab of stone which fell upon him from the roof. Hill was 25 years of age, and was earning between $4 and $6 per day. The Gatliff Coal Company, though employing enough men to do so, had not elected to conduct its operations under the Workmen's Compensation Act (Ky. Stats., sec. 4880 et seq.).

## The Issue.

Plaintiff charged in his petition that his said decedent had been taken from his regular working place and where the conditions were unlike those complained of and placed in said work-place where he was killed, and that the natural conditions in the roof of said work-place to which he was removed by defendant, he being inexperienced in such robbing work, were very dangerous, quite unsafe, and altogether unfit for a work-place, and, the careless and negligent system and method the defendant had adopted in having said work done, made said work-place still more dangerous by reason of causing extra weight to be thrown over where he was required to work, and defendant further negligently failed to have said work-place and the overhead conditions properly inspected, all of which acts of negligence on the part of the defendant, concurring proximately and cooperating the one with the other, caused a large block of slate to fall from the roof of said workplace and instantly kill his decedent, Ernest Hill, and but for which acts of negligence on its part same would not have occurred. He then charges the defendant knew, or by ordinary care could have known, the foregoing, and his decedent did not and could not.

Without demurring, defendant first categorically denied the petition, then charged Hill's own negligence was the sole cause of his death, and then set up a copy of a rather elaborate system of rules it had adopted (often referred to in this record as the "Gatliff Code"), of which it alleged it gave Hill a copy, and the violation of which it alleges caused Hill's death. Reply made the issue.

Many grounds were urged for a new trial below and are relied on for reversal here, which we shall state as we reach them in our disposition of them.

### Alleged Errors in Evidence.

We shall disregard all evidence upon issues not submitted to the jury, for that could have had no effect upon the result.

### Testimony of the Miners.

The plaintiff introduced five miners whose average age is 41 years and whose mining experience averages 26 years. The effect of the testimony of these men was to show the method adopted by the coal company in drawing these pillars was unusual and unsafe and tended to produce strains in the roof and to cause slabs of stone to fall therefrom. Space forbids our copying or quoting the exact language of each witness, but we have stated what it conduced to prove.

Aside from trivial questions as to age, experience, etc., the defendant objected to about all of this testimony and excepted when its objections were overruled. These men testified in part as skilled witnesses and in part as experts.

In Evans v. Com., 230 Ky. 411, 19 S. W. (2d) 1091, 1096, 66 A. L. R. 360, under [4], we said:

"Ordinarily a witness is said to testify as an expert when a state of facts, observed by some one else, is hypothetically submitted to the witness, and he is asked, in view of those facts, to state what his opinion is, whereas a man skilled in a particular business, who makes his own observations, and testifies to what he has observed and his conclusions therefrom, is regarded as a skilled witness. He occupies the same position as any other witness, except that it is recognized that within certain lines he possesses a superior knowledge which enables him to understand, as one without such special knowledge could not, what he has observed."

As experienced miners, these men were properly permitted as skilled witnesses to give their opinions based upon their own observations, and as experts to give their opinions based upon observations made and

testified to by others and submitted to those witnesses in hypothetical questions. See Evans Case, supra, and 22 C. J. p. 704, sec. 792. The defendant had opportunity to test the accuracy of this evidence by cross-examining these witnesses, and it did not fail to do so. How such witnesses should be questioned is well set out in 22 C. J. pp. 705 and 706, secs. 794 and 795. The coal company does not complain of any particular question and answer or of the testimony of any particular witness, but attacks this testimony as a whole, as will be seen from this which is taken from its brief:

"It was unjust, illogical and incompetent to permit a plaintiff in a case of this kind to introduce so-called expert testimony of ignorant coal miners that a method or plan adopted by a mine operator for mining coal or doing robbing work was improper, negligent, or an unsafe method."

We do not know these witnesses, and they may be ignorant, as the defendant claims, but after 25 years' experience they know more about conditions in a coal mine than the members of this court. If by some chance any member of this court were put to work in this or any other coal mine, or even to find his way out, and any one of these old miners was kind enough to offer to show him how to do his work in safety or to find his way out without getting hurt, such member would follow those instructions as obediently as a little child, and there is no good reason for refusing to hear what they may say in a courtroom when we would accept it so implicitly in a coal mine. The university of hard knocks imparts its instruction crudely, often cruelly, yet withal impressively, and it will educate you so far as it goes as well as the proudest universities in the world. We cannot sustain defendant's objection to this testimony. We say this without overlooking what is said in 17 Cyc. 267, and in 22 C. J. p. 728, secs. 823–832.

### Hypothetical Questions.

Plaintiff propounded hypothetical questions to these witnesses embodying all those facts favorable to him which he had introduced evidence to establish, and the defendant objected and now complains because these questions did not embody some facts favorable to

it which it had brought out by cross-examination. The point is not well taken. In Axton v. Vance, 207 Ky. 580, 269 S. W. 534, 537, we said: "Hypothetical questions can be based upon any state of facts that any of the testimony sustains, although there may be conflicting testimony." These witnesses were there for the defendant to cross-examine, and it could propound to them questions embodying facts favorable to it and require that they be answered, and thus endeavor to weaken or destroy the testimony given in response to the questions propounded by plaintiff. See 22 C. J. p. 728, sec. 822 et seq.

### Alleged Right to a Directed Verdict.

At the conclusion of the evidence for the plaintiff, the defendant's motion for a directed verdict was overruled, and it complains of that, thereby raising two questions: Had plaintiff alleged a cause of action? Had plaintiff any proof to establish his cause of action? He must have both to withstand such a motion. See Utterback's Adm'r v. Quick, 230 Ky. 333, 19 S. W. (2d) 980. We shall dispose of these in their order.

We have set out above what was alleged in pleading regarding the issue that was submitted, and defendants say this was only a conclusion of the pleader, and we must admit the allegations of negligence regarding adoption of mining methods were rather general, but we regard them as sufficient. The rule is thus stated in Monroe v. Standard Sanitary Mfg. Co., 141 Ky. 549, 133 S. W. 214, 215:

> "A general allegation of negligence is allowed. The negligence is the ultimate fact to be proved, and is not a legal conclusion. * * * In actions of personal injury resulting from negligence, it was and still is sufficient for the plaintiff to allege, in general terms, that the injury complained of was occasioned by the carelessness and negligence of the defendant, without stating the circumstances with which the infliction of the injury was accompanied, in order to show that it was occasioned by negligence. * * * Under a general allegation of negligence, where the extent of the injury and the manner of its infliction are stated, a party may prove any negligent act of the defend-

ant, or any of its agents or servants superior in authority to the complainant, arising out of the doing of the act resulting in the injury. But, where negligence in other respects than the doing of the act resulting in the injury is relied upon, it must be pleaded.''

To same effect is Braden's Adm'x v. Liston, 258 Ky. 44, 79 S. W. (2d) 241. The petition meets these requirements. The better way to have dealt with a petition as general as this one is the way followed and approved in Ohio Valley Coal & Mining Co. v. Heine, 159 Ky. 586, 167 S. W. 873.

Certainly after two trials and verdicts, defects in these pleadings have been cured. Hunt's Ex'r v. Mutter, 238 Ky. 396, 38 S. W. (2d) 215.

Now was the defendant shown to have adopted methods that were dangerous and that the death of Ernest Hill proximately resulted therefrom? First, we have the mandatory provision of the statute that the defendant shall give special care, oversight, and attention to the men drawing pillars. Section 2726-7, Ky. Stats. Hill was so engaged. Next, the evidence shows the defendant adopted an unusual method of doing this work. Here we have a coal company putting Hill to doing something that is by our statutes recognized as extrahazardous. In O'Brien & Co. v. Shelton's Adm'r, 246 Ky. 537, 55 S. W. (2d) 352, it was held that, where work is extrahazardous, the employer is required to adopt the usual and customary methods employed by prudent men in like work under similar circumstances. This is a duty the master cannot delegate so as to avoid the consequences of the adoption of improper methods. 39 C. J. 285, sec. 412, and 39 C. J. p. 630, sec. 739.

The proof shows the method adopted by the Gatliff Coal Company in drawing pillars is to draw them as soon as the rooms are completed; this they describe in their brief as the ''new method'' as contrasted with the method the evidence shows would be the usual and proper method, which is to allow the pillars and the entry and airway stumps to remain until all the rooms on the entry have been worked out, then to commence at the head of the entry and work from there back to

the mouth of the entry, drawing the pillars and stumps as you come. This method the appellant in its briefs calls the "old method." In Hall v. Proctor Coal Co., 236 Ky. 813, 34 S. W. (2d) 425, we said this was the "usual method." In Proctor Coal Co. v. Crabtree, 175 Ky. 213, 194 S. W. 101, these two plans here referred to as the "old method" and the "new method" were described by the court as the "safe way" and the "unsafe way."

The map in this record, made by the defendant, of the workings in this mine, shows vast areas west and northwest of the place where Hill was put to work, where once were the seventh right, the eighth right, and ninth right entries, which had been completely mined out; this is referred to in this record as "Area B"; and another vast area east and north east of the place Hill was put to work, where had been the eleventh right and twelfth right entries, was also completely mined out; this is referred to as "Area A."

### The Place of the Accident.

The immediate surroundings of this accident roughly approximates a rectangle extending about 400 feet east and west and 300 feet north and south, from which 70 per cent. or more of the coal had been removed, and the remaining 30 per cent. or less was thus represented: About one-sixth of it by three stumps west of the airway, one-sixth by three stumps between the airway and the tenth right entry, and the remaining four-sixths by the pillars between rooms 19 and 20, 20 and 21, and a stump of the recently mined out pillar between rooms 18 and 19. Hill was killed while working on the pillar between rooms 19 and 20. The mined out "Area A" was approximately 600 feet square near to, but not immediately adjoining, this rectangle, but the mined out "Area B," approximately 1,200 feet square, immediately adjoined it. Common sense tells us that the removal of the coal in these areas caused the vast mass of the mountain above to settle down and fill the place where the coal had been in the areas mined out. This movement of the vast mass of the mountain not only disturbed the mountain's mass immediately above these areas but necessarily broke and loosened its mass in the surrounding areas and caused it to

creep. Judge Carroll in the Crabtree Case described it thus:

> "As we gather it from the record, under this creeping process the normal or usual condition of the roof of the mine is changed and the substances composing it are crushed together by the awful weight of the mountain so as to cause large pieces of slate and other substances to be crowded out of their natural place in the roof and fall to the bottom of the mine."

If the defendant had introduced its mining experts, they would doubtlessly have said the greatest strain is always in the center of the span. Under the old method of drawing pillars, there is always a span from the last pillar back to where the mountain has come down and closed the opening where the coal had been, and the greatest strain is about midway from there to the pillar, and the miner working on the pillar is in comparatively safety. The witnesses in this case testify such a plan "throws the weight behind you." In the Crabtree Case Judge Carroll said such a plan relieves the pressure. The old miners who testified in this case said the plan adopted and used by the Gatliff Coal Company would cause the mountain to creep, would put excessive weight on these pillars, would cause the roof to break, cause the roof to break or spring, likely to cause a break, cause weight to come down on the pillars, it will make it more dangerous for the men, it will cause the roof to break, it will cause rocks to fall out, it breaks the roof ahead of you, it causes the top to sag, makes it more dangerous, etc. Concerning the old method, these miners were as unanimous in their indorsement of it as they were in condemning the method used. The burden of their testimony is that by the old method they are able to keep the weight behind them, and, when one of them was asked, why not have the weight in front, he said:

> "Well, you want it not to get a chance to get between you and your house and your dinner bucket. You want the danger behind you. We want to use extreme vigilance to make our life safe."

Getting to the immediate place where Hill was at work, the use of a map made this record quite unintelligible;

318

for example, one witness was asked about the place where Hill was put to work, and he said:

"You take that one out on the left and you have got those two stumps and that means you have got a wall in front and wall over to the entry, drawing your coal out you have got two walls and you have this weight over here and you have got this sag in here and you throw your weight over here and you have got another saggy place and walls holding it up here and if you bring the coal out some other way you get this weight behind you and you could let that weight come down and it wouldn't be so dangerous."

That is as meaningless to us as that much Sanskrit, but to the court and jury, who saw his pointer move about and were able to see what he meant, this evidence may have had all the convincing clarity of a geometrical demonstration.

Whenever these witnesses were being asked about Hill's working place they would pull out this map, and some more record just like the above wuold be made; for example, in cross-examining, defendant asked one witness why the coal on the side marked "n" would not protect Hill as well as the coal on the side marked "s," and he got this answer:

"It will protect the same as this over here and this being robbed out in here the fact of the matter is it being robbed in here and coal here and a rock wall coal and etc. here will throw the weight to the weakest part."

That, too, is meaningless to us, but may have had telling effect on the court and jury who saw where he was pointing. There is plenty more just like that.

To succeed here, the appellant must from this record show us that the plaintiff failed to introduce any evidence to sustain his case, and it cannot do that when there is so much of this record we cannot understand, but which the court and jury could; therefore we cannot say the court erred in overruling its motion for a directed verdict.

The situation shown to have existed in this case is strikingly like that in Gatliff Coal Co. v. Powers'

Adm'r, 219, Ky. 839, 294 S. W. 472, and in Helton v. Gunn Coal Mining Co., 258 Ky. 168, 79 S. W. (2d) 695.

### The Instructions.

Plaintiff had pleaded and introduced proof to show his intestate's death was the proximate result of improper mining methods used by appellant, and the defendant is complaining of instruction No. 1 because it does not require the jury to find, not only that the appellant's method of mining was an unsafe one, but that the defendant knew, or by ordinary care could have known, it was unsafe. The instruction given submitted that idea but in different phraseology. The thing plaintiff is attacking is the method the appellant adopted, which method he alleges produced the conditions that brought about the death of his intestate. All of the evidence was directed to the method adopted and used and to the results of its use, in producing the condition that caused the death of Hill. The instruction is by no means a model, but it submitted the issue made by the pleadings and the evidence and it was not prejudicial. As to an injury resulting from an improper method, the rule was not incorrectly submitted. See Ritt's Adm'x v. Louisville & N. R. Co., 4 S. W. 796, 9 Ky. Law Rep. 307; City of Owensboro v. Gabbert, 135 Ky. 346, 122 S. W. 178, 135 Am. St. Rep. 462, 21 Ann. Cas. 705; W. H. Neill Co. v. Rumpf, 148 Ky. 810, 147 S. W. 910, L. R. A. 1917C, 1199; Louisville & N. R. Co. v. Cox, 145 Ky. 716, 141 S. W. 59; City of Henderson v. Smith, 104 S. W. 277, 31 Ky. Law Rep. 860; E. J. O'Brien & Co. v. Shelton's Adm'r, 246 Ky. 544, 55 S. W. (2d) 352.

### Instructions 2 and 4.

The court gave two instructions upon alleged negligence of Hill. By so doing plaintiff may have been prejudiced, but the defendant was not. Thus we find no merit in its grounds, 2, 3, 4, and 5.

### Conduct of Plaintiff's Counsel.

In his argument counsel said:

"If the defendant did not know it had pursued an improper method of mining which caused the death of Hill it would have introduced witnesses on its behalf to prove the contrary."

This argument was not improper. See 18 Kentucky Digest, Trial, 64 C. J. p. 270, sec. 290; Thomas v. Com., 257 Ky. 605, 78 S. W. (2d) 777.

### The Verdict.

Defendant complains of the verdict as being excessive, but, as Hill was killed, we cannot find it so. It contends the verdict is palpably and flagrantly against the evidence, is not sustained by the evidence, etc., but we do not find it so. When work was first begun on this pillar some two or three weeks before Hill was killed, this pillar was firm and solid, and it was necessary to shoot it, but in a few days a creep, or, more correctly, a thrust, began, and the weight upon this pillar had crushed it so that shooting was no longer necessary, and the men could mine it with pick and shovel. All agree it was the weight of the mountain above that was crushing this pillar. The attention of the mine foreman was called to this top, and all he did was to instruct the men to "take the rock down or timber it, do the best you can." That was not exercising that special care, oversight, and attention that section 2726-7, Ky. Stats., imposed on the defendant, and that was negligence. Defendant cites the case of High Splint Coal Co. v. Baker, 247 Ky. 426, 57 S. W. (2d) 60, but Baker was engaged in making an unsafe place safe, which was not the work in which Hill was engaged. This situation is much like City of Owensboro v. Gabbert, 135 Ky. 346, 122 S. W. 178, 135 Am. St. Rep. 462, 21 Ann. Cas. 705. The defendant cannot shift the duty the law imposes on it by the adoption of rules by which it imposes that duty on the employee. Louisville & N. R. Co. v. Payne's Adm'r, 177 Ky. 462, 197 S. W. 928, L. R. A. 1918C, 376; Petry v. Cabin Creek Consol. Coal Co., 77 W. Va. 654, 88 S. E. 105.

The evidence shows this roof was creeping, thrusting, and sagging; it was crushing the pillar on which Hill was at work, and that was known; indeed, defendant brings that out on cross-examination. If this had been before the enactment of the Workmen's Compensation Act (Ky. Stats., sec 4880 et seq.), we would have said it was negligence for the defendant to keep these men at work there with this going on and that Hill by remaining and continuing to work had assumed the risk, but, as the defendant has not accepted that act, it can-

not avail itself of any contributory negligence or assumption of risk on the part of Hill. Even if Hill was negligent in continuing to work, before his negligence will prevent a recovery by his administrator, his must have been the only negligence and the defendant guilty of none. With any evidence at all appearing to proximately connect Hill's death with defendant's negligence, section 4960, Ky. Stats. blots out all that Hill may have done or omitted which contributed to his death. So with this evidence disclosing negligence upon the part of both Hill and the defendant that contributed to his death, and the defendant having so elected to conduct its work as to be unable to avail itself of defenses based on Hill's negligence, this verdict is not only supported by the evidence, but is about the only one that could be returned under the evidence. We cannot compare the negligence of this master and servant or attempt to estimate which by negligence made the larger contribution to the servant's death. When evidence of the master's negligent contribution to the accident appears, and the master has not accepted the provision of our Workmen's Compensation Act, the law closes the investigation there and then.

### The Jury.

The defendant complains of the way in which there was made up the jury panel from which this jury was selected, but the record shows this complaint was first made after the verdict was returned; then it was too late. See City of Covington v. Lovelace, 243 Ky. 627, 49 S. W. (2d) 593.

### Newly Discovered Evidence.

This case has been tried twice; the $7,000 verdict returned by the first jury was set aside.

Jesse Black testified on the first trial. Before the second trial, Black was killed, and on the second trial the stenographer who had taken down his evidence on the first trial and made a transcript of it was allowed to read that transcript. No objections were made, and, besides, that was a matter within the discretion of the court. See section 4645a-5, Ky. Stats.

Now defendant has found witnesses who say that Black told them that in his opinion this rock was caused

to fall on Hill by Hill's knocking out or resetting the prop under the rock that fell on him, and that, if Hill had not reset the prop, the rock would not have fallen.

If Black had testified in person on this second trial and grounds for his contradiction had been laid, this evidence would be admissible in contradiction of Black, but in the absence of such ground for contradiction, such contradicting testimony is not competent and cannot be made so. See 22 C. J. p. 443, sec. 534.

Judgment affirmed.

The whole court sitting.

THOMAS, J., dissenting.