# Dixie Darby Fuel Co. v. Franks et al.

November 1, 1949.

James Sampson and Sampson & Sampson for appellant.

George R. Pope for appellees.

JUDGE CAMMACK—Affirming.

The contention made on this appeal is that an award made by the Workmen's Compensation Board in favor of the appellees is not supported by the evidence. The question relates to whether or not Roy Franks was electrocuted in an accident arising out of and in the course of his employment. Incidentally, the question involves the effects on the human body of electricity, a force or instrumentality, (so called for want of a better term) about which the last chapter has not been written.

Franks was a healthy, able-bodied man of 40 years at the time he met his death near the entrance of one of the appellant's mines. Just prior to the time his body was found he had been doing repair work on an electric trolley line. He had been dragging an old piece of trolley line some 50 feet in length. There is considerable conflict in the proof as to the nature and

extent of injuries which Franks had received in a fight several days before he met his death, but we do not feel that a recitation of this evidence is necessary for the disposition of the question at hand. Likewise, we deem it unnecessary to discuss in detail the evidence relating to the physical characteristics of the mine entrance where Franks' body was found, or the condition of the body. The entrance was some 34 inches in height and a trolley line carrying some 250 to 275 volts of electricity was attached to the ceiling of the mine. The body was found face up, with the head across one steel rail, and the legs across the piece of trolley wire. There was a small abrasion over the left eye from which a small amount of blood was oozing. There was also a slight bruise or scratch on the neck and also a small place to the left of the breast bone. There was no indication of a bonding or burning on the piece of trolley wire which Franks had been dragging, nor were there any burns found on the body. Aside from these two significant points, the circumstances and physical facts pertaining to the place where Franks' body was found would naturally raise an inference of his having been electrocuted. But we do not think that even these facts and circumstances, from which reasonable inferences could be drawn by the Board, would warrant the conclusion that Franks had been electrocuted.

We gather from the opinion of the Referee, which was adopted by the full Board, that the finding was based upon the medical testimony. Three doctors participated in performing an autopsy. One of these doctors, Charles M. McKee, represented the miners. All three doctors said there was no discoloration of the blood as would be expected to be found in the case of electrocution; that no bubbles were found about the brain, as is usually the case; and that the heart muscles did not show a condition which is usually found in cases of electrocution. Likewise, these doctors said no burns were found on the body. All of them concluded that Franks did not meet his death as the result of electrocution.

In response to a hypothetical question Dr. J. T. Evans, who testified for the appellees, said Franks' death could have resulted from apoplexy, heart failure or electric shock. Dr. Evans was not present when the

autopsy was made. It was his opinion that the blood would be dark in the case of electrocution, but he did not think that burn marks would necessarily have been left upon the body. When asked on redirect examination whether or not his opinion was based upon medical knowledge, Dr. Evans said: "Yes, and in all probability the man died from electric shock." In rebuttal the appellees offered the evidence of Dr. Herman H. Hines. In response to a hypothetical question Dr. Hines said: "I found in numerous cases of electrocution during my 2 years as residence doctor at the Virginia State Penitentiary, that there are good grounds when no burns occur from electrocution when voltage was as high as 32000 to cause sudden death—when sudden death occurs. In this man's case, death could be attributed in my opinion to 3 causes, Namely: cerebral hemorrhage, heart failure from various causes, and electrocution. An autopsy being held and no signs of damage to the vital organs, so death was by electrocution." On cross examination Dr. Hines said he had read the report made by the doctors who performed the autopsy.

Forceful arguments are advanced by the appellant in support of its contention that there was no evidence of substance or of probative value to support the finding of the Board. This rule was applied in a Workmen's Compensation case, American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S. W. 2d 187. Thus it can be seen that the rule was applied in compensation cases even before the abolition of the scintilla rule in the Nugent case (Nugent v. Nugent's Ex'r), 281 Ky. 263, 135 S. W. 2d 877. It is vigorously contended that the testimony of Drs. Evans and Hines does not constitute any more than a scintilla, and, therefore, the Board's award can not be upheld because there is no factual basis for it. Admittedly, the case is a very close one. It could be disposed of readily if we could accept the argument of counsel for the appellant to the effect that: "It will, therefore, be seen that in face of the positive and direct testimony of appellant's skilled witnesses who have testified from actual observation that the testimony of Doctors Evans and Hines amounts to nothing and was not the substantial evidence required to support the award." The medical testimony for the appellant far outweighs that of the appellees, and we have no hesitancy in saying that had we been sitting as

the Board a majority of us would have found for the appellant. But, on the other hand, a majority of the members of the Court think that, when the testimony of Drs. Evans and Hines is viewed for its own worth, as it must be, it constitutes more than a scintilla of evidence. Obviously, under the Pack case, the finding of the Board must be upheld.

In reaching this conclusion we are not unmindful of the distinction to be drawn in the weight of the opinion testimony of an expert witness as against the testimony of a skilled witness. This question was ably discussed in the case of Gatliff Coal Co. v. Hill's Adm'r, 263 Ky. 309, 92 S. W. 2d 56. Expert opinion testimony is a low order of proof, but we have been unable to find any decision of this Court wherein it has been held that testimony such as that under consideration will not constitute more than a scintilla of proof when standing alone. If we had only the testimony of Dr. Evans we would be confronted with a different story; but Dr. Hines gave a plausible reason for his conclusion that Franks met his death as the result of electrocution. He had before him not only the history of the case, as framed in the hypothetical question, but also the results of the autopsy which showed no signs of damage to the vital organs as might have been expected had death resulted from some cause other than electrocution.

Judgment affirmed.